UNITED STATES of America, Appellee,

v.

David HENSON, a/k/a Paul V. Andrews, Defendant, Appellant.

No. 90–1880.

United States Court of Appeals, First Circuit.

Heard April 2, 1991.

Decided Sept. 25, 1991.

Stephen J. Weymouth with whom Balliro, Mondano & Balliro, was on brief, Boston, Mass., for defendant, appellant.

Richard D. Savignano, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, Boston, Mass., for appellee.

Before BREYER, Chief Judge, and TORRUELLA and CYR, Circuit Judges.

CYR, Circuit Judge.

Appellant Paul V. Andrews, a/k/a David Henson (hereinafter "Henson"), was convicted of robbing three federally insured institutions in the Boston area by "force and violence or by intimidation," in viola-

tion of 18 U.S.C. § 2113(a). Henson contends on appeal that all three convictions must be set aside due to insufficient evidence, erroneous jury instructions, and violations of the Interstate Agreement on Detainers Act ("IAD"), the Speedy Trial Act, and the fifth and sixth amendment speedy trial guarantees.

## I

## BACKGROUND

On August 6, 1988, Henson, without permission, left the halfway house at which he was completing a state prison term commenced at Massachusetts Correctional Institute ("M.C.I.") Cedar Junction. On August 29, Henson was arrested and charged with various offenses, including escape. After he was returned to state custody on August 29, Henson received a copy of a Fugitive Apprehension Unit memorandum to the Massachusetts Parole Board, stating that he would be charged with three robberies committed against federally insured institutions while he was at large. On September 7, Henson sent a letter to the United States District Court for the District of Massachusetts, asserting that he "wish[ed] to be very clear on [his] desire for a Speedy trial on any matter outstanding against [him]," making specific reference to the bank robbery charges referenced in the Fugitive Apprehension Unit memorandum enclosed with his letter.[1]

On October 7, a federal complaint was filed against Henson, alleging three violations of 18 U.S.C. § 2113(a). An arrest warrant issued at the same time. A detainer was lodged against Henson at M.C.I. Concord on October 17.[2] Henson acknowledges notice of the detainer, but denies that he was ever informed of his right to speedy disposition of the related charges.

On December 21, Henson sent a letter to the U.S. Marshal requesting information as to the nature of the charges to which the detainer related. He received no reply. On the same date, the Massachusetts Parole Board determined that Henson's parole would not be reinstated, due to "pending cases." On February 6, 1989, Henson filed a petition for writ of habeas corpus, which the district court later denied for failure to exhaust state remedies. On March 1, an official at M.C.I. Cedar Junction acknowledged receipt of Henson's request for information on outstanding warrants and advised Henson that "there are no warrants currently lodged against you. However, the U.S. Marshal has lodged a 'Request to Notify' which requires that we must notify that office upon your release." The official offered to make "further inquiries and file any necessary paper work on [Henson's] behalf."

On March 24, two F.B.I. agents visited M.C.I. Cedar Junction and served Henson with a grand jury subpoena for fingerprints, handwriting exemplars, and photographs. The agents identified themselves, advised Henson of his right to remain silent, and requested permission to interview him. The agents left after Henson declined to be interviewed.

A three count indictment was returned on July 26, 1989. During April 1990, Henson filed a Revised Motion to Dismiss the Indictment for failure to comply with the IAD, and alleging violations of his statutory and constitutional rights to speedy trial. The motion was denied without elab-

---

1. On September 13 the district court responded that "[a]fter an ext[e]nsive search of our criminal records, we can find no record of any criminal actions against you," and further advised Henson to contact the court again if he wished "to proceed with a Habeas Corpus petition...." Henson's letter contained the notation "cc. file District Attorney." An assistant United States attorney attested that a search of "the entire United States Attorney's office" failed to disclose any such letter from Henson.

2. The official detainer form, see U.S. Marshal Form USMM 622.04, contains a box which, if checked, informs prison officials that "the notice requirements of the Speedy Trial Act apply and you are requested to give a copy of the Detainer to the prisoner and to complete the attached Form USM–17, NOTIFICATION REQUIREMENTS—SPEEDY TRIAL ACT, in duplicate, and return both copies of the Form USM–17 to this office with receipted copies 2 and 3 of this detainer." This box was not checked on the detainer form lodged against Henson at M.C.I. Concord.

oration, and Henson was tried and convicted on all three counts.

## II

### DISCUSSION

#### A. *IAD Claim*

■ The IAD, 18 U.S.C.App. III, prescribes procedures by which a member state, including the federal government, "may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." *United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978). Article III(a) of the IAD establishes "relatively simple" procedures by which a prisoner may assert the right to obtain speedy disposition of pending charges. *See Browning v. Foltz,* 837 F.2d 276, 283 (6th Cir.1988), *cert. denied sub nom. Browning v. Jabe,* 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). Article III(a) provides:

> [A prisoner] shall be brought to trial within one hundred and eighty days after *he shall have caused to be delivered to the prosecuting officer and the appropriate court* of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.... The request of the prisoner shall be accompanied by a *certificate* of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

(Emphasis added). Article III(b) of the IAD states that

> *written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden,* commissioner of corrections, or other official *having custody of him, who shall promptly forward it* together *with the certificate to the appropriate prosecuting official and court....*

(Emphasis added).

" '[C]ourts have generally required that prisoners must strictly comply with IAD procedures before they will dismiss charges on the basis of a violation of [the 180 day provision of] Article III.' " *Casper v. Ryan,* 822 F.2d 1283, 1292 (3d Cir.1987), *cert. denied,* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988), quoting *Nash v. Jeffes,* 739 F.2d 878, 884 (3d Cir.1984), *rev'd on other grounds sub nom. Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); *see also Johnson v. Stagner,* 781 F.2d 758, 761 (9th Cir.1986) (" 'formal requirements must be met before the timely trial provisions of the IAD come into play' " (quoting *Tinghitella v. California,* 718 F.2d 308, 312 (9th Cir. 1983)).

A vital aim of the requirement of strict compliance is to assure that the appropriate prosecuting authorities promptly are placed on notice when Article III is invoked by an inmate. The inmate bears the burden of demonstrating compliance with the formal procedural requirements of Article III. *United States v. Moline,* 833 F.2d 190, 192 (9th Cir.1987). If a premature communication, or one which is misdirected or fails to provide the information required by Article III, were considered sufficient to trigger the 180–day provision under the IAD, it "could create 'a trap for unwary prosecuting officials,' " *Casper,* 822 F.2d at 1292–1293 (quoting *Nash,* 739 F.2d at 884), and undermine the primary purpose of Article III, that of affording a " 'systematic method of rapidly adjudicating charges against prisoners held in another jurisdiction,' " *id.; see also Johnson,* 781 F.2d at 762. We hold that the premature letter Henson directed to the district court, at a time when there were no charges pending against him, was neither reasonably calculated to alert, nor did it alert, either the court, the prosecutor, or the appropriate custodial officials of Henson's intention to

invoke his right to speedy disposition under the IAD.

■ Henson contends that he made a "good faith" effort at invoking Article III, which should be considered sufficient in these circumstances since his failure to meet certain formal requirements was due to neglect on the part of custodial authorities. *Cf. Casper*, 822 F.2d at 1293 ("Strict compliance with Article III may not be required when the prisoner has done everything possible, and it is the custodial state that is responsible for the default.").

> Article III(c) of the IAD requires that— [t]he warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall *also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.*

(Emphasis added). Henson concedes that Massachusetts prison authorities informed him of the federal detainer on October 17, 1988, but he contends that the record fails to show that they notified him of his "right to make a request for final disposition." He correctly points out that federal officials failed to check the box on the detainer form which would have requested the "person having custody of the prisoner ... to advise the prisoner of his right to demand trial."

Notwithstanding the checkmark omission by federal officials, however, the record demonstrates that Massachusetts prison officials indeed *did* advise Henson of the right to request speedy disposition of the charges to which the detainer related. The same form used to advise Henson on October 17, 1988 that a detainer had been lodged against him, likewise informed him that he had

> the right to apply for a speedy trial on any untried indictment or complaint from any court in the Commonwealth in ac-

cordance with Rule 36(b), Mass. Rules of Criminal Procedures dated 7-1-79; Probation defaults in accordance with Mass. Gen.Laws Chapter 279, Section 3; *Out of State or Federal under the Interstate Agreement on Detainers.*

(Emphasis added). The form reflects that a copy was sent to the inmate. Henson concedes that his caseworker received the form on or around the date indicated on the form and that he saw the form no later than December 1988. Thus, as required by Article III(c), the form adequately advised Henson that he had the "right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based."

■ Moreover, even if the omission of the checkmark were treated as a violation of the IAD, *but see United States v. Walborn*, 730 F.2d 192 (5th Cir.), *cert. denied*, 469 U.S. 842, 105 S.Ct. 147, 83 L.Ed.2d 86 (1984) (failure of sending state to check appropriate box on detainer, and custodial state's consequent failure to inform prisoner of speedy trial right, not a violation of IAD), an inmate who relies on a default by the custodial state must still show that he "substantially complied [with Article III] to the extent possible." *Casper*, 822 F.2d at 1293. Henson cannot demonstrate substantial compliance with Article III.

The only written notice which conceivably could be treated as an IAD request for speedy disposition was Henson's premature letter to the district court, more than a month before the issuance of the detainer.[3] Since no complaint was filed until October, the district court responded that it could "find no record of any Federal criminal action against you." Thus, in the circumstances, the letter was functionally insufficient to trigger the IAD 180-day speedy trial provision. *See, e.g., United States v. Espinoza*, 841 F.2d 326, 329 (9th Cir.1988) (IAD not triggered as inmate sent no notice to court, caused no certificate of inmate status to be sent to court or prosecutor,

---

**3.** Henson's letter was sent only to the district court and at a time when no charges were pending against him. The record would not support a finding that the United States Attor-

ney's Office was provided with a copy of Henson's letter. *See supra* note 1. Nor did the letter contain a certificate of inmate status, as specifically required under Article III(a).

and *failed to channel request through prison officials*); *Johnson,* 781 F.2d at 762 (inmate did not notify prosecutor, caused no inmate status certificate to be sent to court or prosecutor, and did not channel request through prison officials); *United States v. Ricketson,* 498 F.2d 367, 372–373 (7th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974) (IAD inapplicable to request for immediate trial sent before filing of detainer).[4] To treat a premature and incomplete request, neither directed to the prosecutor nor channeled through the appropriate custodial authorities, as a sufficient IAD request for speedy disposition of unfiled charges would indeed "create 'a trap for unwary prosecuting officials' and ... defeat the underlying purpose of Article III's procedural requirements...." *Casper,* 822 F.2d at 1292–1293. As Henson failed to cause a written request for final disposition to be delivered to the appropriate prosecuting official or the appropriate custodial authorities, the IAD claim must fail. *See* 18 U.S.C.App. III § 2 Art. III(a), (b) & (c).

B. *Speedy Trial Claims*

Henson contends that the lengthy delays in obtaining an indictment and in bringing him to trial violated his rights under the Speedy Trial Act and under the fifth and sixth amendments.

(i) Speedy Trial Act

■ The Speedy Trial Act, 18 U.S.C. §§ 3161–3174, ("STA") requires, *inter alia,* that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). In order for section 3161(b) to apply, however, "*both* a federal complaint and a federal arrest and/or summons are required." *United States v. Lee,* 818 F.2d 302, 305 (4th Cir.1987) (emphasis in original). The federal complaint against Henson was filed on October 7, 1988, and the indictment was returned on July 26, 1989. The matter in dispute with respect to the STA claim is whether Henson, as he contends, was placed under arrest on March 24, 1989, when F.B.I. agents visited him at M.C.I. Cedar Junction and served him with a grand jury subpoena.

The district court found that appellant "was not arrested until after the indictment." The only evidence presented by Henson was his own affidavit containing the following conclusory sentence: "On [March 24, 1989], the Federal Marshals placed me under arrest for bank robberies." The F.B.I. agents' affidavits attested that they did not place Henson under arrest, but merely served him with the subpoena, read him his rights and attempted to interview him. After Henson expressed the desire to remain silent, the agents left.

In view of the altogether conclusory, and at least partially mistaken, evidentiary opposition presented by Henson,[5] we cannot

---

**4.** Similarly, Henson's December 21, 1988 letter to the U.S. Marshal, requesting information as to the charges on which the detainer was based, did not comply with the requirements of the IAD. It was misdirected, lacked the necessary inmate status information, and indicated no intention to request speedy disposition. Moreover, Henson presented no evidence that either the petition for writ of habeas corpus, filed February 6, 1989, or his pre-March 1, 1989 request for information on outstanding warrants, demanded speedy disposition or set out the requisite inmate status information. Finally, neither appears to have been directed to the prosecutor or to the appropriate custodial officials.

Henson implies, without elaboration, that the failure to inform him of the charges underlying the detainer somehow inhibited his ability to assert or exercise his right to speedy disposition under the IAD. We cannot agree. An inmate's invocation of the right to speedy disposition under the IAD is not contingent on the nature of the charges underlying the detainer. Rather, a proper inmate request under the IAD "shall operate as a request for final disposition of *all* untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the State *to whose prosecuting official the request for final disposition is specifically directed.*" 18 U.S.C.App. III § 2 Art. III(d) (emphasis added).

**5.** The district court certainly could have found that Henson was visited on March 24, 1989, not by "Federal Marshals," as Henson attested, but by F.B.I. agents, as both agents attested. Moreover, Henson himself attested that he was not served with a complaint, though one issued on October 7, 1988, at the same time the arrest

conclude that the district court committed clear error in finding that Henson, already in state custody and subject to a federal detainer, was not placed under arrest on March 24. Furthermore, we consider it significant that Henson does not state that an arrest warrant was served on him, despite the fact that the warrant had been issued months earlier. Accordingly, the STA claim must fail. *See United States v. Iaquinta*, 674 F.2d 260, 267 (4th Cir.1982) ("since there was no federal arrest of the defendants and no taking of them into federal custody until after they were indicted by a federal grand jury, there was no violation of the Speedy Trial Act"); *United States v. Shahryar*, 719 F.2d 1522, 1523– 1525 (11th Cir.1983) (starting date for STA is date defendant is delivered into federal custody).

### (ii) Sixth Amendment

▆▆▆▆ Henson contends that the nine and one half month delay between filing of the federal complaint and trial amounted to a sixth amendment deprivation.[6] A sixth-amendment based speedy trial claim is subject to the four-part balancing test enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and applied in *United States v. Colombo*, 852 F.2d 19, 24– 26 (1st Cir.1988). We must consider: (1) the length of the delay; (2) the reasons for the delay; (3) whether the right to speedy trial was properly asserted; and (4) the prejudice resulting from the delay. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192; *Colombo*, 852 F.2d at 23. None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are

related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

Assuming, without deciding, *see United States v. Butler*, 426 F.2d 1275, 1277 (1st Cir.1970) (absent good reason, nine month delay excessive in case dependent on eyewitness testimony), that the nine and one half month delay raises a presumption of prejudice to Henson, *see Barker*, 407 U.S. at 530, 92 S.Ct. at 2192 ("[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance"), we nevertheless hold that the cumulative effect of the preindictment delay, viewed under all the analytic elements prescribed in *Barker*, was insufficient to establish a sixth amendment violation. We turn to the *Barker* criteria.

The crimes charged, unarmed bank robberies, did not present particularly complex problems of proof for the prosecution. *Cf. id.* at 531, 92 S.Ct. at 2192 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge."). Moreover, all preindictment delay was caused by the government's negligence. While "time elapsed because of negligence should be 'weighted less heavily' than if it were willfully sought by the government," *Colombo*, 852 F.2d at 25, quoting *Barker*, 407 U.S. at 514, 92 S.Ct. at 2182, "[d]elays of this sort, although more neutral than intentional delays, are, of course, still viewed with disfavor." *United States v. Cabral*, 475 F.2d 715, 718 (1st Cir.1973). Accordingly, the preindictment delay weighs entirely against the government.[7]

warrant issued. As Henson never attested that he was served with an arrest warrant, there was nothing before the district court in opposition to the F.B.I. agents' affidavits except Henson's unexplicated conclusion that he was arrested by Federal Marshals.

6. The eight months which elapsed between indictment and trial are attributable chiefly to Henson and are not relied on in support of the sixth amendment claim.

7. Henson asserts that the government failed to respond to his attempts to ascertain the charges

against him and failed to provide him with a copy of the federal complaint when he was served with the grand jury subpoena. He has not shown how the withholding of such information contributed to the delay, nor what tactical advantage the government might have gained by any delay in providing him with that information. We will not presume bad faith on the part of the government on the basis of these conclusory assertions. *See Colombo*, 852 F.2d at 25 (refusing "to find bad faith from a record barren of indications that any in fact existed").

The extended unintentional preindictment delay nevertheless was insufficient to establish a sixth amendment violation. In *Colombo*, 852 F.2d at 25–26, despite a two year delay due to "inexcusable negligence" on the part of the government, we declined to find a sixth amendment violation, absent "demonstrable prejudice," and given "appellant's own lack of enthusiasm for the [speedy trial] right which [he] now assert[s]." Similarly, Henson demonstrated neither the requisite prejudice nor adequate alacrity in asserting a request for speedy trial.

█ We assess prejudice by measuring the effects of preindictment delay on the three interests intended to be safeguarded by the sixth amendment speedy trial guarantee: (1) prevention of oppressive pretrial incarceration; (2) minimization of the accused's anxiety and concern; and (3) protection of the defense from impairment. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *Colombo*, 852 F.2d at 25.

First, Henson maintains that he suffered "oppressive incarceration" due to preindictment delay, because the pendency of the federal charges influenced the Commonwealth's denial of parole in December 1988. We cannot agree. It is clear that any such prejudice was minimal at most, since the principal reason relied on by the parole board was not the pendency of federal charges but Henson's escape from the halfway house in August 1988.

Second, Henson contends that he suffered anxiety over the pendency of the federal charges as evidenced by his efforts to ascertain the nature of the charges against him. While "this type of prejudice is not to be brushed off lightly," *United States v. Mitchell*, 723 F.2d 1040, 1049–1050 (1st Cir.1983), considerable anxiety normally attends the initiation and pendency of criminal charges; hence only "undue pressures" are considered. *See Colombo*, 852 F.2d at 25 (analytic standard is minimization, not elimination, of natural consequences of delay). We note as well that though anxiety may have motivated Henson to attempt to ascertain the nature of the charges against him, it was insufficient to prompt him to request a speedy trial after receiving the detainer.

Among the three interests safeguarded by the right to speedy trial as guaranteed under the sixth amendment, "the most serious is [protection against impairment of the defense] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. The impairment nevertheless must be serious enough to amount to a constitutional deprivation. *Colombo*, 852 F.2d at 25; *see also United States v. Massaro*, 544 F.2d 547, 549 n. 2 (1st Cir.1976), *cert. denied*, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977) (defendant must show "serious prejudice or improper government conduct").

Henson makes the general claim that preindictment delay made it difficult for him to obtain alibi witnesses and other evidence. The only specific example of alleged impairment, however, is set forth in Henson's affidavit, which attests to the death of a "possible alibi witness," without identifying the alibi witness, the nature of the alibi defense, or the anticipated testimony. As we cannot assess an impairment claim stemming from the alleged demise of an unidentified "possible alibi witness" absent the benefit of some understanding as to the nature of the putative alibi defense and of the anticipated testimony, the present claim must be rejected. *See Colombo*, 852 F.2d at 26 (finding no prejudice in absence of more specific information where appellant merely asserted that delay made it difficult to keep track of a myriad of unidentified witnesses). *Compare* Fed. R.Crim.P. 12.1(a) (requiring defendant to provide notice of intention to offer alibi defense, "specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom the defendant intends to rely to establish such alibi").

Finally, except for the premature letter request sent to the district court before any federal charges had been lodged against him, Henson at no time requested a speedy trial. Even after Henson was in-

formed of the federal detainer and his right to speedy trial, he made no request whatever for disposition of the federal charges. "[F]ailure to assert the [speedy trial] right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. Indeed, the record does not indicate that Henson asserted a right to speedy trial until it "became a possible means by which to obtain dismissal of the charges against [him]." *Colombo*, 852 F.2d at 26. Under the balancing test required by *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, Henson's sixth amendment claim must fail.

### (iii) Fifth Amendment

■■■ Under the fifth amendment, a defendant must show "that (1) pre-indictment delay caused substantial prejudice to his right to a fair trial and, (2) the Government intentionally delayed indictment in order to gain a tactical advantage over the accused." *United States v. Picciandra*, 788 F.2d 39, 42 (1st Cir.1986), *cert. denied*, 479 U.S. 847, 107 S.Ct. 166, 93 L.Ed.2d 104 (1986); *United States v. Lebron-Gonzalez*, 816 F.2d 823, 831 (1st Cir.), *cert. denied*, 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 (1987); *see also United States v. Marion*, 404 U.S. 307, 324–325, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971) (due process violation based on preindictment delay requires showing of actual prejudice and purposeful delay aimed at securing an advantage for the government). As there was no "substantial prejudice" to Henson's right to speedy trial, the due process claim too must fail.

### C. *Sufficiency of the Evidence*

■■■ We review a denial of a timely motion for judgment of acquittal by assessing whether the evidence and all reasonable inferences therefrom, viewed most favorably to the verdict, could persuade a rational juror that the defendant is guilty beyond a reasonable doubt. *See, e.g.,*

*United States v. Desmarais*, 938 F.2d 347, 352 (1st Cir.1991); *United States v. Cuevas-Esquivel*, 905 F.2d 510, 514 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990).[8]

■■■ Section 2113(a) criminalizes the taking of money or property from a federally insured institution either by force and violence, or by intimidation. *United States v. Atkins*, 698 F.2d 711, 715 (5th Cir.1983). Intimidation is conduct "reasonably calculated to produce fear." *United States v. Harris*, 530 F.2d 576, 579 (4th Cir.1976); *see also United States v. Robinson*, 527 F.2d 1170, 1171 (6th Cir.1975); *United States v. Alsop*, 479 F.2d 65, 66 (9th Cir. 1973) (taking in such a way as to place ordinary person in fear of bodily harm constitutes "intimidation"). The evidence was sufficient to demonstrate intimidation.

Henson was charged in count II with robbing the Boston Five Cent Savings Bank. During the robbery, Henson stood within two feet of the teller. He handed the teller a note directing her to "put fifties and twenties into an envelope now!!" The teller promptly responded by removing the money from her cash drawer and handing it to Henson. The teller testified that Henson made no "threatening gestures" and engaged in no acts of "force" or "violence," but that she was very nervous and upset.

■■■ Although no weapon was displayed and no threat of bodily harm was expressed, a rational juror reasonably could find that Henson's emphatic written demand for the immediate surrender of the bank's money was enough to cause fear in an ordinary person under these circumstances. *See United States v. Bingham*, 628 F.2d 548, 549 (9th Cir.1980) (handing teller a note stating that she had "three seconds" to hand over money, and repeating demand, amounted to intimidation); *United States v. Robinson*, 527 F.2d at 1171 (demanding teller to "[g]ive me all

---

8. Given that no timely motion for judgment of acquittal was made as to counts I and III, we may reverse "only if the evidence is so inadequate that to affirm the conviction would amount to 'clear and gross' or 'manifest' injus-

tice." *United States v. Arango-Echeberry*, 927 F.2d 35, 37 (1st Cir.1991); *United States v. Lopez*, 709 F.2d 742, 746 (1st Cir.), *cert. denied*, 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983).

your money," accompanied by presentation of pouch, constituted intimidation); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir.1983) (note stating: "Give me all your hundreds, fifties and twenties. This is a robbery.") Neither the actual or threatened display of a weapon, nor an explicit threat of force, is essential to establish intimidation under the statute. *Robinson*, 527 F.2d at 1172; *Bingham*, 628 F.2d at 549.

Similar evidence supported the verdicts under counts I and III. As to count I, there was testimony that Henson handed the teller a note stating, "Put small bills, twenties and fifties, in an envelope and hurry." Moreover, as the teller was gathering the money, Henson said, "I know you're stalling. Hurry up and you won't get hurt." The teller testified that she was "very scared" during the robbery. As to count III, the teller testified that she was handed a note demanding that money be handed over "quickly" and that after she had handed him some of the money she was told "you can do better than that." The teller testified that she was "frightened," and "ran" from her teller window after the robbery. From the perspective of an ordinary person confronted with the predicament in which these tellers suddenly found themselves, Henson's communications clearly were sufficient to raise fears of bodily harm. *See Lawrence*, 618 F.2d 986, 987 (2d Cir.1980) (statement to teller, "I don't want to see you or anyone else get hurt," clear evidence of intimidation). Thus, Henson's convictions under counts I and III did not amount to "clear and gross" or "manifest" injustice. *See Arango–Echeberry*, 927 F.2d at 37.

D. *Jury Instructions*

(i) "Lesser Included Offense" Instruction

■ Henson assigns as error the failure to give an unrequested jury instruction on the lesser included offense of "bank larceny" under 18 U.S.C. § 2113(b). We review for plain error. *See United States v. Hunnewell*, 891 F.2d 955, 956 (1st Cir. 1989); *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); *see also* Fed.R.Crim.P. 52(b).

The plain error hurdle is high. *See, e.g., United States v. Young*, 470 U.S. 1, 16 [105 S.Ct. 1038, 1046, 84 L.Ed.2d 1] (1985) (plain errors are limited to those which "undermine the fundamental fairness of the trial"); *United States v. Atkinson*, 297 U.S. 157, 160 [56 S.Ct. 391, 392, 80 L.Ed. 555] (1936) (plain errors are restricted to those which "are obvious, or ... seriously affect the fairness, integrity or public reputation of judicial proceedings"). It follows, unsurprisingly, that the plain error exception is to be used "sparingly," only to prevent justice from miscarrying. *United States v. Frady*, 456 U.S. 152, 163 n. 14 [102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816] (1982). Inasmuch as plain error "gives a defendant a free second bite at the cherry, [it] is to be narrowly limited." *United States v. Rivera*, 872 F.2d 507, 509 (1st Cir.), *cert. denied*, [493 U.S. 818] 110 S.Ct. 71 [107 L.Ed.2d 38] (1989).

*Hunnewell*, 891 F.2d at 956. "The doctrine focuses ... only on blockbusters: those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below." *United States v. Griffin*, 818 F.2d 97, 100 (1st Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987).

■ The failure to instruct on the doctrine of lesser included offense was not plain error. A defendant is entitled to a lesser included offense instruction only if the evidence would permit a rational jury to find guilt under the lesser charge and to acquit on the charge alleged. *United States v. Lopez Andino*, 831 F.2d 1164, 1171 (1st Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988). The principal difference between bank robbery, under 18 U.S.C. § 2113(a), and bank larceny, under 18 U.S.C. § 2113(b), is that bank larceny does not include the elements of "force and violence or ... intimidation." *United States v. Carter*, 540 F.2d 753 (4th Cir.1976). As already discussed, sufficient uncontrovert-

ed evidence was presented under each count to support a jury finding that Henson committed these crimes through use of intimidation. In these circumstances, we do not find that the failure to instruct on the lesser charge of bank larceny was error of sufficient magnitude to overcome the "high hurdle" interposed by the plain error rule. *See Lopez Andino*, 831 F.2d at 1171 (failure to give lesser included offense instruction not plain error where no request was made and there was no objection to its omission); *cf. United States v. Young*, 655 F.2d 624, 627 (5th Cir.1981) (no plain error in failure to instruct on lesser charge of possessing cocaine, where substantial evidence existed of intent to distribute).

### (ii) Elements of Offense

■ The district court twice mistakenly instructed the jury that the government's burden under section 2113(a) was to prove that the takings were accomplished "by force *or* violence, or by intimidation," whereas section 2113(a) requires that the government prove either the use of "force *and* violence" or "intimidation." (Emphasis added).[9]

While the government concedes error, we must also decide whether the error was harmless. *United States v. Doherty*, 867 F.2d 47, 58 (1st Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). Since an erroneous instruction on an essential element of the crime is of constitutional dimension, however, we can uphold the convictions only if the error was harmless "beyond a reasonable doubt." *Desmarais*, 938 F.2d at 353; *Doherty*, 867 F.2d at 58. "An erroneous instruction on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element." *Id.*

We conclude that the error was harmless beyond a reasonable doubt, as the jury, given the evidence, the prosecution's theo-

ry of the case and the court's instructions, could have convicted Henson only on the basis of findings that all three robberies were committed by intimidation. There was no evidence whatever that Henson utilized either force or violence in the commission of any of the robberies. Rather, the evidence was that all three robberies were committed exclusively by means of verbal and written intimidation. Moreover, the government made clear in its closing argument that its case was based solely on the theory that the robberies were committed by means of intimidation. Finally, the court never instructed the jury on the meaning of the term "force and violence."

*Affirmed.*

---

9. On another occasion, however, the court correctly instructed on the elements of section 2113(a). Moreover, the district court instructed the jury only on what constitutes "intimidation," and did not define the term "force and violence."