# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00284-CR

### Ex parte Leonard Barker

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
## NO. D-1-DC-15-100034, HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In October 2013, the State of Virginia issued a capias for the arrest of Leonard Barker after he was indicted on several felony charges, was released from jail on a personal recognizance bond, and failed to show up in court. Two months later, Barker was arrested in Texas on unrelated charges. After his arrest in Texas, Barker entered into a plea bargain with the State regarding the Texas offenses. Under the terms of the agreement, Barker was sentenced to twelve months' imprisonment, and Barker completed his sentence in December 2014.

While Barker was serving his sentence, the State of Virginia communicated with the Texas Department of Criminal Justice and with the Travis County District Attorney's Office about transferring Barker to Virginia, but Barker refused to sign a waiver allowing him to be returned to Virginia. Accordingly, in January 2015 and after Barker finished serving his sentence, the State of Virginia applied for a Governor's Warrant from Governor Greg Abbott's Office seeking interstate rendition of Barker, and in February 2015, Governor Abbott issued a warrant authorizing the extradition of Barker. *See* Tex. Code Crim. Proc. art. 51.13, § 2 (stating that "the Governor of this

State" is obligated "to have arrested and delivered up to the Executive Authority of any other State . . . any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State"). During the time between when Barker's sentence was completed and when the warrant was issued, Barker remained in custody.

Once the warrant was sent to where Barker was in custody, Barker filed an application for writ of habeas corpus challenging his "detention pursuant to [the] extradition proceedings." After a hearing was held regarding Barker's application, the magistrate recommended denying the requested relief, and the district court adopted the magistrate's findings of fact, conclusions of law, and recommendations. *See* Tex. Gov't Code § 54.976(a)(4) (authorizing trial court to refer applications for writ of habeas corpus to magistrate). In two issues on appeal, Barker contends that the district court erred by denying his application.

We will affirm the district court's order denying his writ application.

**STANDARD OF REVIEW**

Appellate courts review a trial court's denial of habeas-corpus relief under an abuse-of-discretion standard. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, we "review the record evidence in the light most favorable to the trial court's ruling," *Kniatt*, 206 S.W.3d at 664, and the applicant has the burden of proving his claims by a

2

preponderance of the evidence, *Ex parte Graves*, 271 S.W.3d 801, 803 (Tex. App.—Waco 2008, pet. ref'd).

**DISCUSSION**

**Whether Barker was a Fugitive**

In his first issue on appeal, Barker points to the Uniform Criminal Extradition Act as well as the Interstate Agreement on Detainers. The Uniform Criminal Extradition Act implements the Extradition Clause of the United States Constitution and has been adopted by Texas. *See* U.S. Const., art. IV, § 2, cl. 2 (providing that person charged in any state who flees from justice and is "found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime"); Tex. Code Crim. Proc. art. 51.13 (adopting Uniform Criminal Extradition Act). Extradition proceedings are "limited in scope in order to facilitate a swift and efficient transfer of custody to the demanding state." *Ex parte Potter*, 21 S.W.3d 290, 294 (Tex. Crim. App. 2000). Accordingly, the courts in an asylum state are limited to the following determinations when "considering release on habeas corpus": "(a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." *Michigan v. Doran*, 439 U.S. 282, 289 (1978). Although "[t]he Uniform Criminal Extradition Act does not formally define 'fugitive,'" "[a]ll that is necessary to make a person a fugitive from justice is that he leave a state under whose laws he has incurred guilt." *Ex parte Sanchez*, 987 S.W.2d 951, 952 (Tex. App.—Austin

3

1999, pet. ref'd, untimely filed); *see also Potter*, 21 S.W.3d at 297 n.8 (explaining that "'[f]ugitive means presence in the demanding state when the crime was allegedly committed'" (quoting *Moncrief v. Anderson*, 342 F.2d 902, 904 (D.C. Cir. 1964))).  Moreover, "[a] governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Doran*, 439 U.S. at 289.  "If the Governor's Warrant is regular on its face, the burden shifts to the accused to show the warrant was not legally issued, not based on proper authority, or contains inaccurate recitals." *Ibarra v. State*, 961 S.W.2d 415, 417 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Under the Interstate Agreement on Detainers, if an individual has been imprisoned in one state and has a pending indictment against him in another state, he is entitled to be brought to trial within 180 days in that other state if he delivers "to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment." Tex. Code Crim. Proc. art. 51.14, art. III(a).  Moreover, although the Interstate Agreement on Detainers does allow for extensions of time, it provides a deadline stating that if trial is not held within the 180 days, "any indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." *Id.* art. 51.14, art. III(a), (d).  Further, the Interstate Agreement on Detainers specifies that any request for final disposition "shall also be deemed a waiver of extradition" as well as "consent by the prisoner to the production of his body in any court where his presence may be required in order to effectuate the purposes of this agreement." *Id.* art. 51.14, art. III(e).  In addition, the 180-day deadline "does not commence until the prisoner's request for final disposition of the charges against him *has actually been delivered* to the court and prosecuting officer of the

jurisdiction that lodged the detainer against him," *Fex v. Michigan*, 507 U.S. 43, 52 (1993) (emphasis added), and the inmate has "'the burden of demonstrating compliance with the formal procedural requirements of'" the Interstate Agreement on Detainers, *Morganfield v. State*, 919 S.W.2d 731, 734 (Tex. App.—San Antonio 1996, no pet.) (quoting *United States v. Henson*, 945 F.2d 430, 434 (1st Cir. 1991)).

With the preceding in mind, Barker argues in his first issue on appeal that the district court abused its discretion by denying his application for a writ of habeas corpus because he "was not a 'fugitive' at the time the Governor's Warrant was issued." Although Barker acknowledges that he was a fugitive when he was first arrested in Texas, he asserts that he was no longer a fugitive when the Governor's Warrant issued because he "tried to effect a request for final disposition of his Virginia charges in May 2014 . . . by way of forms" provided by the Texas Department of Criminal Justice under the Interstate Agreement on Detainers. *See* Tex. Code Crim. Proc. art. 51.14. As support for this proposition, Barker refers to an exhibit that he attached to his application for writ of habeas corpus showing that he signed paperwork requesting final disposition of his Virginia offenses in May 2014 and showing that he gave his consent to be transferred to Virginia for final disposition of those charges. In addition, during the habeas proceeding, Barker and Barker's former attorney each testified that Barker was working with a coordinator at the jail to file the paperwork. In light of the fact that he filled out the forms in May 2014, Barker urges that the 180-day deadline for complying was in November 2014. For that reason, he asserts that the indictments from Virginia were no longer effective under the Interstate Agreement on Detainers and, therefore, that he was no longer a fugitive for purposes of the Uniform Criminal Extradition Act and was entitled to be discharged from custody.

5

Although Barker attached as exhibits to his application forms that he filled out seeking final disposition of his Virginia offenses, nothing in the record demonstrates that those forms were sent to or received by the relevant officials in Virginia or that the indictments from Virginia were dismissed. On the contrary, when challenging Barker's right to the relief requested, the State admitted into evidence during the habeas proceeding a letter from Cathryn Evans, who was "the custodian of records for Interstate Act on Detainers and Extradition cases" for Alexandria, Virginia. In her letter, Evans explained that she has been seeking the return of Barker and that all of the correspondence that she has received from Texas officials concerning Barker indicated that Barker was "refusing to return to Virginia." Further, she wrote that she has "never received any request from . . . Barker to return him, via Interstate Act of Detainer or through any waiver of Extradition to Virginia. Furthermore, I searched the local court records to verify that no such documents were filed or sent." Evans also attached emails showing her communications with various officials seeking extradition of Barker and a document listing the efforts that had been made to return Barker to Virginia.

In light of the record before us, we cannot conclude that the district court abused its discretion by determining that Barker did not satisfy his burden of establishing that he was not a fugitive at the time of the habeas hearing. For these reasons, we overrule Barker's first issue on appeal.

**Whether the Governor's Warrant was Timely**

In his second issue on appeal, Barker contends that the district court abused its discretion by denying his application for writ of habeas corpus because the Governor's Warrant was issued after he was entitled to be released from custody. When presenting this issue on appeal,

6

Barker highlights provisions of the Code of Criminal Procedure authorizing a magistrate to issue a fugitive warrant after "a complaint is made to [the] magistrate that" a "person within his jurisdiction is a fugitive from justice from another State," Tex. Code Crim. Proc. art. 51.03, and notes that when the accused is brought before a magistrate after the magistrate has issued a fugitive warrant, the magistrate must determine whether "the accused is charged in another State with the offense named in the complaint" and whether to "commit the defendant to jail to await a requisition from the Governor of the State from which he fled," *id.* art. 51.05. Further, Barker points out that if the magistrate decides to place the accused in jail, the length of the confinement cannot be "longer . . . than ninety days." *Id.* Moreover, Barker notes that if someone has been confined under a fugitive warrant and has not been "arrested under a warrant from the Governor of this State before the expiration of ninety days form the day of his commitment," the individual "shall be discharged." *Id.* art. 51.07.

After referring to those statutory provisions and deadlines, Barker insists that he should have been released in mid-January 2015, which was before the Governor's Warrant issued, and that his continued detention beyond mid-January was illegal. In particular, he notes that he was brought before a magistrate in October 2014, while he was serving out his sentence for the Texas offenses, and was informed that the State of Virginia wanted to place a detainer on him. In other words, Barker argues that the hearing from October 2014 was the type of hearing described above in which a magistrate must determine whether an accused has been charged with a crime in another state and, if so, whether to confine the accused. *See id.* art. 51.05. Accordingly, he insists that the hearing started the running of the 90-day deadline, that he should have been released in mid-January

7

2015, and that the issuance of the Governor's Warrant after mid-January was untimely. *Cf. Lanz v. State*, 815 S.W.2d 252, 253-54 (Tex. App.—El Paso 1991, no pet.) (determining that trial court should have granted habeas challenge asserting that continued confinement past 90 days for individual arrested under fugitive warrant was improper when no Governor's Warrant had been issued). Barker also asserts that he had resolved his Texas charges by the time of the hearing because he had entered a plea agreement and pleaded guilty and urges that "he had additionally provided consent for the production of his body" in Virginia by filling out the forms discussed in the first issue.[1]

As a preliminary matter, we note that, as admitted to by Barker, the Governor's Warrant was issued in February 2015 before Barker filed his application for writ of habeas corpus. Accordingly, his complaint regarding his continued confinement beyond the 90-day deadline was rendered moot by "the issuance of a valid governor's warrant." *See Echols v. State*, 810 S.W.2d 430, 431 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *see also Ex parte Logan*, No. 05-10-01354-CR, 2011 Tex. App. LEXIS 2040, at *3-5 (Tex. App.—Dallas Mar. 22, 2011, no pet.) (not designated for publication) (concluding that issuance of valid Governor's Warrant rendered moot complaint regarding four-year confinement under fugitive warrant and noting that appellant had been simultaneously detained on local charges); *Ex parte Froman*, No. 14-02-00450-CR, 2002 Tex. App. LEXIS 7436, at *7 (Tex. App.—Houston [14th Dist.] Oct. 17, 2002, no pet.) (not designated for

---

[1] In his brief, Barker acknowledges that he was informed during a hearing in December 2013 that the state of Virginia wanted him returned to its jurisdiction. However, Barker argues that the 90-day deadline was not applicable to the December 2013 hearing because "he still had charges pending in [Travis County] at the time."

8

publication) (explaining that "issuance of a valid governor's warrant renders moot any complaints arising from confinement under a fugitive warrant, including alleged violations of Texas Code of Criminal Procedure article 51.07"); *Lanz*, 815 S.W.2d at 254 (clarifying its ruling that habeas relief should have been granted by stating that defendant "should be released from custody of the fugitive warrant unless, of course, the governor's warrant has in the meantime been served on him").

Further, we note that the record in this case does not contain a transcript from the October 2014 hearing and that the portions of the record from the habeas hearing discussing the October 2014 hearing do not demonstrate that the magistrate in that hearing decided to confine Barker under article 51.05. *See* Tex. Code Crim. Proc. art. 51.05. Moreover, the Governor's Warrant was issued within 90 days of when Barker finished serving his sentence for the Texas offenses, and the Uniform Criminal Extradition Act authorizes a judge or magistrate to confine for up to 90 days a person charged with an offense in another state and who has fled from justice to allow "the arrest of the accused to be made under a warrant of the Governor." *See id.* art. 51.13, §§ 15 (authorizing confinement for 30 days), 17 (allowing sixty-day extension). Accordingly, we cannot determine that the district court abused its discretion by determining that the 90-day period for the issuance of a Governor's Warrant did not did not commence until after Barker finished serving his sentence and that, therefore, Barker was not entitled to be released before the Governor's Warrant issued.

Even assuming for the sake of argument that a decision regarding whether to confine Barker under the fugitive-warrant provisions described above was made during the October 2014 hearing, we note that one of our sister courts of appeals addressed a similar issue regarding whether those deadlines rendered the issuance of a Governor's Warrant untimely. *See Ex parte Wall*, Nos. 02-11-00326-CR, -517-CR, 2012 Tex. App. LEXIS 9652 (Tex. App.—Fort Worth Nov. 21,

9

2012, no pet.) (mem. op., not designated for publication). As set out in the opinion in *Wall*, Wall was arrested and confined in Texas for offenses that occurred in Texas, and the trial court placed a "no-bond hold" on him after learning that he was an escapee from another state. *Id.* at *1-2. Several months later, Wall pleaded guilty to one of the Texas offenses, and the other Texas offense was dismissed. *Id.* at *2-3. After Wall pleaded guilty, the trial court sentenced him to time served and "determined that probable cause existed to issue a fugitive warrant." *Id.* at *3. Approximately two months later, "a Texas Governor's warrant" was issued to extradite Wall. *Id.* In response, Wall filed an application for writ of habeas corpus "challenging the timeliness of the Texas Governor's warrant" because the warrant was not issued until over a year after he was confined and after a hold had been placed on him. *Id.* at *4.

In affirming the trial court's denial of Wall's requested habeas relief, the appellate court noted that Wall was not illegally detained from the time of his confinement to the time that the fugitive warrant was issued because he was being confined for the Texas offenses. *Id.* at *21-22. Accordingly, the appellate court reasoned that the Governor's Warrant was timely because it was issued within 57 days of the fugitive warrant being issued. *Id.* at *23. Alternatively, the appellate court explained that if the year-old "no-bond hold" that was placed on Wall shortly after he had been arrested could be considered a fugitive warrant, then it applied from the time that Wall finished serving his Texas sentence, making the Governor's Warrant timely because it was issued within 90 days of the end of his sentence. *See id.* at *24.

In light of the analysis from *Wall*, we would be unable to conclude that the district court abused its discretion by determining that the 90-day deadline for holding an accused on a

fugitive warrant did not start to run until after Barker finished serving his sentence for the Texas offenses and that, therefore, Barker was not entitled to be released before the Governor's Warrant issued. *See id.*; *see also Ex parte Froman*, 2002 Tex. App. LEXIS 7436, at *7-8 (overruling claim regarding greater than two-year delay between appellant's arrest and issuance of Governor's Warrant and noting that for two of those years appellant was being held under local charge and conviction and not on fugitive warrant).

For all of these reasons, we overrule Baker's second issue on appeal.

## CONCLUSION

Having overruled all of Barker's issues on appeal, we affirm the district court's order denying his writ application.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed: January 8, 2016

Do Not Publish