# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 10, 2019          Decided February 25, 2020

No. 18-3010

UNITED STATES OF AMERICA,
APPELLEE

v.

STEVE JAMAL SMITH, ALSO KNOWN AS JABRAIL LOVE,
APPELLANT

———

Consolidated with 18-3016

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:17-cr-00116-01)
(No. 1:17-cr-00116-02)

———

*Sandra G. Roland*, Assistant Federal Public Defender, argued the cause for appellants. With her on the joint brief were *A. J. Kramer*, Federal Public Defender, and *Mary E. Davis*. *Thomas Abbenante*, appointed by the court, entered an appearance.

*Eric Hansford*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jessie K. Liu*, U.S. Attorney, and *Elizabeth Trosman* and *Suzanne G. Curt*, Assistant U.S. Attorneys.

Before: HENDERSON, GRIFFITH, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: A jury convicted Steve Jamal Smith and John King Lionell of conspiracy to commit bank robbery by intimidation. Because the evidence amply supports their convictions, we affirm.

I

A

A grand jury indicted Smith and Lionell for bank robbery and conspiracy to commit bank robbery under 18 U.S.C. §§ 371 and 2113(a). Following a two-day trial, a petit jury convicted them of conspiracy. As to the substantive robbery charge, the jury acquitted Smith and deadlocked over Lionell, whom the government elected not to retry.

The evidence at trial established that around 1:50 p.m. on January 27, 2016, Smith and Lionell entered a Washington, D.C. branch of BB&T Bank. They feigned interest in opening an account and spoke with the bank manager in the lobby about how to do so. While the defendants ostensibly mulled over their options, the bank manager returned to his office. Once the manager was out of sight, Smith and Lionell approached the tellers. Smith began chatting with the first teller, while Lionell showed the second teller a note that read: "Give me all your money. 100s, 50s and 20s only." Trial Tr. 37:23-24 (Nov. 7, 2017). Startled, the teller immediately activated the bank's silent alarm but then "froze," even though she had been trained to obey a robber's demands. *Id.* at 40:20-23. Lionell hounded

her, "What are you doing? What are you doing? What are you doing?" *Id.* at 39:5-6. But the teller said nothing. At trial, she testified that she was so "scared" she "couldn't even move," let alone speak. *Id*. at 40:23-24. When the bank manager came to see whether the defendants needed more help, Lionell told Smith it was "time to go." *Id.* at 39:14. They left the bank without any cash, jumped the turnstile at the nearby Columbia Heights Metro station, and took the train to Silver Spring, Maryland.

They stopped and chatted briefly in a diner next to a branch of Capital One Bank. Around 2:30 p.m., the defendants decided to try their luck at Capital One. This time, Smith took the lead while Lionell stood nearby, keeping watch and staring at the teller. Smith showed the teller a note with bill denominations and repeatedly demanded, "Give me the money." Trial Tr. 12:1 (Nov. 8, 2017). At first, the teller "thought it was a change order that he needed," but once she "realized it was a robbery," she was "scared." *Id.* at 8:24, 18:18-20. The teller tried to hand over the cash as instructed by bank protocol, but Smith ordered her to keep her arms raised, preventing her from reaching the money or the alarm. After a brief stand-off, the defendants again fled the bank empty-handed.

B

The jury found Smith and Lionell guilty of conspiracy to commit bank robbery by intimidation. They timely appealed on the ground that the government's evidence was insufficient to support their convictions. The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. "[W]e review the evidence of record *de novo*, considering that evidence in the light most favorable to the government, and affirm a guilty verdict where '*any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt.'" *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

II

A defendant is guilty of conspiracy when (1) he "enter[s] into an agreement with at least one other person to commit a specific offense"; (2) he "knowingly participate[s] in the conspiracy with the intent to commit the offense"; and (3) a member of the conspiracy commits "at least one overt act . . . in furtherance of the conspiracy." *United States v. Gatling*, 96 F.3d 1511, 1518 (D.C. Cir. 1996). The government need not prove the agreement by direct evidence, as it may be "inferred from the facts and circumstances of the case." *Iannelli v. United States*, 420 U.S. 770, 777 n.10 (1975).

A defendant is guilty of bank robbery when he, "by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, . . . any property or money . . . belonging to, or in the care, custody, management, or possession of, any bank." 18 U.S.C. § 2113(a). Here, the government did not assert that Smith and Lionell conspired to rob "by force and violence," but rather "by intimidation." Intimidation means "conduct reasonably calculated to put another in fear, or conduct and words calculated to create the impression that any resistance or defiance by the individual would be met by force." *United States v. Carr*, 946 F.3d 598, 602 (D.C. Cir. 2020) (internal quotation marks and citation omitted).

Because the jury convicted Smith and Lionell of conspiracy, the government need not prove that the defendants *actually* engaged in intimidation, only that they *agreed* to do so. As both sides acknowledge, the best evidence in this case

of whether Smith and Lionell entered into an unlawful agreement is their joint conduct during the robberies. *See* Smith Br. 13 ("[T]he government failed to present any evidence that appellants had agreed to do anything other than what they actually did."); Gov't Br. 8 ("[W]e agree that the issue ultimately turns on whether appellants' actions in the two banks rose to intimidation . . . .").

Their conduct amply supports the jury's finding that Smith and Lionell agreed to rob by intimidation. In the first bank, Smith distracted one teller while Lionell handed another a note commanding, "Give me all your money." In the second bank, Lionell kept watch while Smith ordered the teller not only to "[g]ive [them] the money," but also to keep her hands in the air. As other circuits have recognized, demands for cash can, under certain circumstances, "carry with them an implicit threat: if the money is not produced, harm to the teller or other bank employee may result." *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002); *see also United States v. Clark*, 227 F.3d 771, 773, 775 (7th Cir. 2000) (holding that, when the robber announced "this is a hold up," the teller could "reasonabl[y] . . . suspect and fear that [the robber] might use physical force to compel satisfaction of his demand for money").

Importantly, both tellers testified that they were, in fact, intimidated. *See, e.g.*, Trial Tr. 38:20 (Nov. 7, 2017) ("I was scared. I mean, I freaked out . . . ."); *id.* at 39:6-7 ("I couldn't even say nothing . . . ."); *id.* at 40:23-24 ("I was scared, I couldn't even move."); *id.* at 57:9-10 ("I felt scared, how anybody would be in that situation."); Trial Tr. 8:24 (Nov. 8, 2017) ("[I felt] scared."). Although the test for intimidation is objective, a "teller's feelings about the crime she experienced are 'probative of whether a reasonable person would have been afraid under the same circumstances.'" *Clark*, 227 F.3d at 775

(quoting *United States v. Hill*, 187 F.3d 698, 702 (7th Cir. 1999)); *see also United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019); *Gilmore*, 282 F.3d at 403; *cf. United States v. Davis*, 635 F.3d 1222, 1226 (D.C. Cir. 2011) (explaining that a "victim's perception . . . may be relevant" to whether the defendant "objective[ly]" created the impression of possessing a dangerous weapon (emphasis and internal quotation marks omitted)). Indeed, Smith and Lionell arguably thwarted their own robberies by being *too* intimidating. The first teller was so scared that she froze. And the second teller was sufficiently frightened that she obeyed Smith's demand to keep her hands in the air, even though it prevented her from following bank protocol and giving him the money he demanded.

Every circuit that has been presented with a similar combination of facts—that is, written and oral demands for money combined with efforts to control the teller's physical movements and evidence that the teller was afraid—has affirmed the bank robbery conviction. *See, e.g.*, *Gilmore*, 282 F.3d at 402 (affirming convictions where the defendant presented demand notes and issued commands like "Hurry up"); *Clark*, 227 F.3d at 775 (affirming a conviction where the defendant gave the teller a demand note and stated "Yes, Ma'am, this is a holdup."); *United States v. McCarty*, 36 F.3d 1349, 1357-58 (5th Cir. 1994) (affirming a conviction where the defendant did not speak to the teller but handed her a note reading, "Be calm. This is a robbery."); *United States v. Lucas*, 963 F.2d 243, 244 (9th Cir. 1992) (affirming a conviction where the defendant displayed a note reading, "Give me all your money, put all your money in the bag."); *United States v. Henson*, 945 F.2d 430, 439 (1st Cir. 1991) (affirming a conviction where the defendant did not speak to the teller but handed her "a note directing her to 'put fifties and twenties into an envelope now!!'"); *United States v. Graham*, 931 F.2d 1442, 1442-43 (11th Cir. 1991) (affirming a conviction where the

defendant did not speak to the teller but gave her a note reading, "This is a robbery. Please give me small, unmarked bills, touch off no alarms, and alert no one for at least ten minutes. Thank you."); *United States v. Hopkins*, 703 F.2d 1102, 1103 (9th Cir. 1983) (affirming a conviction where the defendant "spoke calmly, made no threats, . . . was clearly unarmed," and gave the teller a note reading, "Give me all your hundreds, fifties and twenties. This is a robbery."). Following the reasoning of our sister circuits, we find the facts here equally sufficient to prove conspiracy to rob by intimidation.

Smith and Lionell object that their behavior did not establish an agreement to rob by intimidation because they "spoke in a conversational tone" and did not "raise their voices, display a weapon, make any threats, or make any threatening gestures." Smith Br. 11. But none of those facts would prevent a jury from finding an agreement to intimidate. *See, e.g.*, *Clark*, 227 F.3d at 775 ("No matter how one interprets [the defendant's] manners as polite or non-violent, the combination of his actions still amount[s] to intimidation."); *Henson*, 945 F.2d at 439 (affirming a robbery conviction "[a]lthough no weapon was displayed and no threat of bodily harm was expressed"); *Graham*, 931 F.2d at 1443 (affirming a conviction despite the robber's impeccable manners and use of "please" and "thank you"); *Hopkins*, 703 F.2d at 1103 (affirming a conviction though the robber "spoke calmly" and "was clearly unarmed").

## III

Considering the record as a whole—including the defendants' demands and the tellers' fear—we conclude that

the jury was presented with sufficient evidence to convict Smith and Lionell. Accordingly, we affirm.

*So ordered.*