UNITED STATES of America

v.

**Peggy L. MAXWELL**

**No. CR 01–10446–MLW.**

United States District Court, D. Massachusetts.

March 3, 2003.

Adam J. Bookbinder, United States Attorney's Office, Boston, MA, for Plaintiff.

Bernard Grossberg, Bernard Grossberg, Barry S. Pollack, Donnelly, Conroy & Gelharr, LLC, Owen S. Walker, Federal Defender's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

WOLF, District Judge.

## I. SUMMARY

On December 6, 2001, the grand jury returned a sealed indictment charging Peggy Maxwell, Eduardo McIntosh and Calvin DeAson with conspiracy and several counts of mail and wire fraud. Almost eleven months later, in response to the court's oral order of November 1, 2002, Maxwell filed a motion to dismiss the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (the "STA"). The court denied Maxwell's motion in its December 24, 2002 Memorandum and Order. On February 13, 2003, Maxwell filed a Motion to Dismiss for Violation of Her Constitutional Speedy Trial Rights. The government filed a response and Maxwell submitted a reply. The court heard oral

argument on the motion on February 26, 2003. For the reasons described below, Maxwell's motion is being denied.

## II. FACTS

The following statement of facts necessarily repeats many included in the December 24, 2002 Memorandum and Order, but also includes additional information relevant to the instant Motion to Dismiss.

Maxwell was indicted on December 6, 2001. She was arrested twelve days later on December 18, 2001 in the Middle District of Pennsylvania. Maxwell was brought to the District of Massachusetts and had her initial appearance before the Magistrate Judge on January 4, 2002. A detention hearing held on Thursday, January 10, 2002 was continued until Friday, January 11, 2002 because Maxwell did not have an attorney. The January 11, 2002 hearing was again continued as Maxwell had not yet been interviewed by Pretrial Services. The hearing resumed on Monday, January 14, 2002, and was held in conjunction with the arraignment and detention hearing of McIntosh. It is unclear whether the Magistrate Judge addressed the issue of Maxwell's detention on January 14, 2002, but she did consider the issue when the hearing continued on January 18, 2002. On January 18, 2002, Maxwell requested that the hearing be continued again so that a third party custodian could appear before the court. The third party custodian appeared in court on January 23, 2002 and testified on Maxwell's behalf. The Magistrate Judge set conditions of release including the posting of a two unsecured bonds totaling $35,000. Maxwell and her third party custodian posted their bonds that day.

On March 5, 2002, Maxwell filed a motion to sever her trial from that of the other two defendants. The government responded on March 19, 2002. DeAson was arraigned on March 6, 2002. The Magistrate Judge issued a final status report as to Maxwell on March 7, 2002. She did not issue a final status report as to McIntosh and DeAson until October 1, 2002.

The same day, I issued a notice that I would hold a change of plea hearing for McIntosh and a scheduling conference for the other two defendants on November 1, 2002. Usually, I do not schedule proceedings in a criminal case until the Magistrate Judge issues a final status report for every defendant who has made an initial appearance. This practice generally serves the efficient administration of justice. I do, however, depart from this practice in appropriate cases, particularly if a request that I take some action is directed to me.

During the November 1, 2002 status conference, I indicated that my Courtroom Deputy and the Magistrate Judge agreed that there were seventy days remaining for trial under the STA.[1] I asked counsel for Maxwell whether Maxwell was asserting that an STA violation had occurred because some of the filings indicated that there might be a dispute as to whether certain periods of time were excludable for STA purposes. Counsel for Maxwell stated that he believed that the seventy-day period had expired as to Maxwell. I, therefore, ordered Maxwell to file a motion to dismiss and supporting memorandum.

After receiving briefing on Maxwell's motion from both Maxwell and the govern-

---

**1.** It is my practice to have the Courtroom Deputy perform independent STA calculations. Although the Magistrate Judges in this District calculate the time remaining correctly in almost all cases, in rare instances their calculation appears to be incorrect. The Courtroom Deputy's independent calculation provides an additional protection against inadvertent STA violations. This court takes the STA very seriously and believes that the extra time spent in performing a second calculation is well-spent.

ment, I heard oral argument on December 11, 2002. At the conclusion of the argument, I instructed the parties to be ready to plan to begin jury selection on February 25, 2003 in the event that I denied Maxwell's Motion to Dismiss. On December 18, 2002, the government filed a Motion to Reconsider Trial Date because the Assistant United States Attorney assigned to the case had a conflict with a trial in the District of Rhode Island.

On December 24, 2002, I denied Maxwell's Motion to Dismiss. On January 6, 2002, I allowed the government's Motion to Reconsider Trial Date and rescheduled the trial for March 10, 2003. That motion was allowed because "the requested two-week postponement of the February 24, 2003 trial date [was] necessary to afford the government continuity of counsel in this complex case and to provide the lead prosecutor with the time reasonably necessary to prepare this case for trial . . . ." Jan. 6, 2003 Memorandum and Order at 1.

On January 6, 2003, the court also held that granting the government's request for a two-week postponement of the trial would not violate Maxwell's Sixth Amendment right to a speedy trial. *Id.* at 1–2. On February 13, 2003, as part of a series of pretrial motions, Maxwell for the first time claimed that the total time that it has taken to bring her case to trial violated the Sixth Amendment. As set forth below, this contention is not correct.

## III. ANALYSIS

### A. *The Applicable Standard*

 "That there was no violation of the STA in this case does not necessarily preclude a court from finding a violation of [Maxwell's] Sixth Amendment right to a speedy trial." *United States v. Munoz–Amado,* 182 F.3d 57, 61 (1st Cir.1999). However, "it would be unusual to have a case where the STA is satisfied but the Sixth Amendment guarantee is violated." *United States v. Salimonu,* 182 F.3d 63, 69 (1st Cir.1999). Indeed, Maxwell has not cited such a case.[2]

In *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established a four-part balancing test to be used in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. A court should consider: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) the prejudice to the defendant caused by the delay. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182, 33 L.Ed.2d 101. "None of these factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.' " *United States v. Henson,* 945 F.2d 430, 437 (1st Cir.1991) (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. 2182, 33 L.Ed.2d 101).

The first factor, the length of the delay, was identified by the Supreme Court as:

> to some extent a triggering mechanism. Until there is some delay

---

**2.** In *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court found a Sixth Amendment violation in a case involving a eight-and-one-half year delay between indictment and arrest without discussing the implications of the STA. However, Doggett was indicted in February, 1980 and the portion of the STA providing for sanctions for violations of the STA's time limits did not become effective until July 1, 1980. *See* 18 U.S.C. § 3163(c).

which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. For example, the delay that can be tolerated for an ordinary street crime is less than for a serious, complex conspiracy charge.

*Barker,* 407 U.S. at 530–31, 92 S.Ct. 2182, 33 L.Ed.2d 101. The Supreme Court has said that "the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (citations omitted).

*Munoz–Amado,* 182 F.3d at 61.

### B. *The Court Assumes that the Delay in This Case is Presumptively Prejudicial*

■ "The speedy trial right attaches upon arrest or indictment, whichever occurs first." *United States v. Trueber,* 238 F.3d 79, 87 (1st Cir.2001). In this case, Maxwell was indicted on December 6, 2001 and her trial will commence on March 10, 2003. The total delay is 459 days or slightly more than fifteen months.

The defendant and the government both describe *United States v. Santiago–Becerril,* 130 F.3d 11 (1st Cir.1997) and *Munoz–Amado, supra,* as cases in which the First Circuit found that delays of fifteen months and nineteen months, respectively, were presumptively prejudicial. Strictly speaking, this is inaccurate. Rather, the First Circuit *assumed* that these delays were presumptively prejudicial and rejected the defendants' speedy trial claims after analyzing the four *Barker* factors. *Santiago–*

*Becerril,* 130 F.3d at 21 ("We shall assume, under the foregoing, that the fifteen month delay in this case was 'presumptively prejudicial' so as to trigger further inquiry ...."); *Munoz–Amado,* 182 F.3d at 61 ("We shall assume, under the foregoing, that the nineteen month delay in this case was 'presumptively prejudicial' so as to trigger further inquiry.").

Although the instant case is more complex than either *Munoz–Amado* or *Santiago–Becerril,* it is not necessary to decide the government's claim that a presumption of prejudice is not appropriate. Rather, assuming without deciding that the delay should be presumed prejudicial, consideration of the *Barker* factors demonstrate that the Sixth Amendment has not been violated.

### C. *The Length of the Delay*

■ Even assuming that the delay has been long enough to be presumptively prejudicial, it has not reached the point where it weighs heavily in favor of dismissal. "[T]he weight given in the analysis to the length of the delay depends upon the extent to which the delay exceeds the bare minimum considered presumptively prejudicial." *Santiago–Becerril,* 130 F.3d at 22. In *Santiago–Becerril,* the First Circuit held that the fifteen month delay at issue was "[a]rguably ... long enough to tip the scales slightly in favor of" dismissal. *Id.* The First Circuit characterized *Santiago–Becerril* as a case that was more complicated than an ordinary street crime, but less complicated than a serious, complex conspiracy charge. *Id.* That case involved allegations of carjacking resulting in death and ultimately took five days to try. *Id.* at 14–15. Maxwell is charged in this case with one count of conspiracy, two counts of mail fraud, and fifteen counts of wire fraud. It is expected to take two weeks to try. This case is more complicated than

*Santiago–Becerril,* in which an equivalent delay only "[a]rguably . . . slightly" weighed in favor of dismissal. Thus, the delay in this case either does not weigh in favor of dismissal or weighs only very slightly in favor of it.

### D. *The Reasons for the Delay*

In *Barker,* the Supreme Court held that "different weights should be assigned to different reasons." *Barker,* 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. While a "deliberate attempt to delay the trial in order to hamper the defense" would be weighed heavily against the government, "a more neutral reason such as negligence or overcrowded courts" would be weighed "less heavily." *Id.*

*Trueber,* 238 F.3d at 88.

In this case, there is no evidence of bad faith or negligence on the part of the government. On the other hand, Maxwell did not contribute to the delay either, except by not asking me directly for a speedy trial, as described below. Maxwell claims that she was ready for trial in March 2002. However, Maxwell's co-defendants and the government remained involved in discovery and other proceedings before the Magistrate Judge until October 1, 2002. Thirty-one days of delay—the month of October—are attributable to this court because the parties had completed proceedings before the Magistrate Judge and were waiting for a conference with me to schedule a hearing on Maxwell's Motion to Sever, among other things. Maxwell's Motion to Sever, which required a hearing, was pending during this entire period and the time was, therefore, excludable for STA purposes. *See* 18 U.S.C. § 3161(h)(1)(F). As Maxwell's counsel neither asked me for a hearing or an expedited ruling, as counsel sometimes do, the delay in deciding the motion to sever,

which was ultimately withdrawn, should not be deemed undue for Sixth Amendment purposes either. This issue, however, is not material.

The following two months—November and December, 2002—are chargeable to Maxwell as they were spent litigating and deciding her first, unmeritorious Motion to Dismiss. The remaining delay is attributable to two factors. The parties needed time to prepare for trial once it was decided on December 24, 2002 that the charges against Maxwell would not be dismissed. The Local Rules presume that the parties will have a minimum of 30 days to complete discovery, make pretrial submissions, and receive pretrial rulings before commencing trial. *See* Rule 117.1(A) of the Local Rules of the United States District Court for the District of Massachusetts. In this complex case, the need to afford all parties adequate time to prepare and to assure the availability of the lead prosecutor made a March 10, 2003 trial date necessary and appropriate.

### E. *The Defendant's Assertion of Her Speedy Trial Right*

"The defendant's assertion of [her] speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker,* 407 U.S. at 531–32, 92 S.Ct. 2182. Maxwell argues that this factor "weighs overwhelmingly in her favor." Def.'s Memo. at 3. "The government concedes that . . . Maxwell's assertion of her speedy trial right weighs in her favor [but] disagrees with the substantial weight Maxwell seeks to give it." Govt.'s Response at 7.

I agree that this factor weighs in favor of dismissal. However, Maxwell did not do everything possible to ensure that she received a speedy trial. Although Maxwell did object to the continuances the govern-

ment and her co-defendants sought from the Magistrate Judge, she did nothing to alert me that she was seeking a prompt trial.

Maxwell did not file her motion to dismiss under the STA until I ordered her to do so in November, 2002. If the arguments Maxwell raised in her STA motion were correct, the seventy-day period prescribed by the STA would have expired on June 27, 2002. The time before March 6, 2002 is not included in the seventy-day period because DeAson was not arraigned until March 6, 2002. *See United States v. Barnes*, 251 F.3d 251, 258–59 (1st Cir.2001) ("[T]he STA clock begins to run anew on the date of the last codefendant's arraignment."). Maxwell argued that the seventy-day period began to run thirty days after the final papers were submitted on her Motion to Sever. *See* 18 U.S.C. § 3161(h)(1)(J). The government filed its opposition to her Motion to Sever on March 19, 2002. Thus, one hundred days later, on June 27, 2002, Maxwell could have made the arguments she made in November, 2002. Had she informed me of a potential STA issue in the summer of 2002, or requested a decision on her motion to sever while the case was still before the Magistrate Judge, I would have addressed the issue promptly and may well have given her an earlier, separate trial.

However, Maxwell did not ask me for a prompt trial until I raised the issue with her attorney on November 1, 2002. Since it is ultimately the District Judge—not the Magistrate Judge or the government—who schedules trials, this omission diminishes the weight that should be assigned to this factor.

The assertion of a defendant's speedy trial rights should not be a game in which the defendant attempts to engineer a basis to argue that the STA or the Sixth Amendment has been violated. While this case suggests that communications between Magistrate Judges and District Judges can and should be improved, defense counsel are fully capable of alerting District Judges to issues that are genuinely urgent and do so in appropriate cases. While Maxwell's counsel skillfully laid the groundwork to attempt to achieve dismissal on STA and Sixth Amendment grounds, he did not take the simple step best calculated to get Maxwell a speedy trial—asking me, the District Judge, for one or filing a motion to dismiss under the STA promptly after Maxwell claimed it matured.

### F. The Prejudice to the Defendant Caused by the Delay

Although no one of the four factors is necessary or sufficient to demonstrate a Sixth Amendment violation, the final factor is often the most important. In its most recent opinion concerning the application of the four *Barker* factors, the First Circuit wrote: "Finally, *and most importantly,* [the defendant] has not shown he suffered any prejudice as a result of the fourteen-month delay..... [T]he courts have great reluctance to find a speedy trial deprivation where there is no substantial and demonstrable prejudice." *United States v. Nelson Rodriguez*, 319 F.3d 12 (1st Cir.2003) (emphasis added).

"The prejudice resulting from a delay between indictment and trial is obvious: the accused must live with the anxiety and concern of facing trial; he may have to spend an extended length of time in custody; and his defense may be impaired if witnesses' memories fade." *Id.; see also Barker*, 407 U.S. at 532, 92 S.Ct. 2182 (identifying three interests that the Sixth Amendment is designed to protect).

In this case, Maxwell was incarcerated for less than two months and subject to home detention for about ten more

months. However, the First Circuit has held that even "fifteen months of pretrial incarceration by itself was insufficient to establish a constitutional level of prejudice." *Santiago–Becerril,* 130 F.3d at 23.

 Contrary to the requirements of the Local Rules, Maxwell has not filed an affidavit in support of her motion to dismiss. *See* L.R. 7.1(B)(1). Nevertheless, the court assumes that the pendency of the instant charges has caused her anxiety. However, "[w]hile this type of prejudice is not to be brushed off lightly, considerable anxiety normally attends the initiation and pendency of criminal charges; hence only 'undue pressures' are considered" in deciding if a Sixth Amendment violation has occurred. *United States v. Henson,* 945 F.2d 430, 438 (1st Cir.1991) (internal quotation marks and citation omitted).

Most significantly, Maxwell has submitted no evidence that her defense has been impaired by the passage of time. Such injury is the most serious form of prejudice that delay can entail. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182. Maxwell, however, has not identified any witness or evidence that has been lost to her pending trial. Moreover, the passage of time may actually benefit a defendant. *See United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *Trueber,* 238 F.3d at 91. The government must prove its charges beyond a reasonable doubt to achieve a conviction. Thus, the fading of witnesses' memories has the potential to benefit a defendant. *See Loud Hawk,* 474 U.S. at 315, 106 S.Ct. 648; *Trueber,* 238 F.3d at 91. Indeed defendants often seek to delay trials in the hope of achieving a tactical advantage. *See Barker,* 407 U.S. at 521, 92 S.Ct. 2182; *Trueber,* 238 F.3d at 91. Maxwell has not done so here. However, the record provides no evidence from which I can infer that the time this case has taken to come to trial has actually injured Maxwell and there is no reason to presume that she has been harmed rather than helped by the passage of time.

## IV. ORDER

Having considered the length of the delay in commencing trial, the reasons for it, the efforts Maxwell made to get an earlier trial date, and the lack of any unusual prejudice caused by the passage of time, I find that Maxwell's Sixth Amendment right to a speedy trial has not been violated.

Therefore, Maxwell's Motion to Dismiss for Violation of Her Constitutional Speedy Trial Rights (Docket No. 114) is hereby DENIED.