# United States Court of Appeals
## For the First Circuit

No. 03-2042

UNITED STATES OF AMERICA,

Appellee,

v.

PEGGY L. MAXWELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(Hon. Mark L. Wolf, U.S. District Judge)

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

Barry S. Pollack, with whom Karen A. Pickett and Donnelly, Conroy & Gelhaar, were on brief for Defendant-Appellant.

Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for Appellee.

December 3, 2003

**STAHL**, <u>Senior Circuit Judge</u>.  Defendant-appellant Peggy Maxwell appeals from her conviction and sentence on one count of wire fraud, in violation of 18 U.S.C. § 1343.  She challenges (1) the district court's denials of her motions to dismiss on statutory and constitutional speedy trial grounds, and (2) the district court's inclusion for sentencing purposes of certain losses as "relevant conduct" attributable to her.

## I. BACKGROUND

Maxwell and her co-defendants Eduardo McIntosh and Cal DeAson were indicted on December 6, 2001, on one count of conspiracy, in violation of 18 U.S.C. § 371; two counts of mail fraud, in violation of 18 U.S.C. § 1341; and fifteen counts of wire fraud, in violation of 18 U.S.C. § 1343.  All of the charges were in connection with an investment fraud and Ponzi scheme involving two sets of investors that ran from October 1998 until December 2001.  McIntosh, the leader and primary beneficiary of the scheme, used most of the money obtained for personal expenses, but also used some of the money from the second set of investors, recruited in May 1999, to repay the first set of investors, recruited in October 1998.  DeAson and Maxwell acted as McIntosh's agents, recruiting investors and channeling investor money to McIntosh.

Maxwell and McIntosh were arraigned on January 4, 2002, and on January 14, 2002, they entered not guilty pleas.  On March 5, 2002, Maxwell moved to sever her case from her co-defendants.

-2-

The Magistrate Judge issued a final status report as to Maxwell on March 7, 2002, stating that her case was being returned to the district court. The Magistrate Judge did not issue a final status report for McIntosh and DeAson until October 1, 2002. The same day, the district court issued a notice that it would hold a change of plea hearing for McIntosh and a scheduling conference for Maxwell and DeAson on November 1, 2002. Between March 7 and October 1, 2002, the remaining co-defendants and the government agreed to several continuances.

The district court first addressed Maxwell's severance motion at the November 1 scheduling conference, when it indicated that it would hold a hearing on the motion. Maxwell withdrew the motion the same day.

On November 4, 2002, Maxwell filed a motion to dismiss the indictment contending that she had been denied the right to a speedy trial under the Speedy Trial Act (STA), 18 U.S.C. § 3161. She alleged that the government's motions for continuances were neither timely nor "properly grounded." As a result, she claimed, the Magistrate Judge never had the opportunity to address fully whether the "ends of justice" served by the continuances "outweigh[ed] the best interest of the public and the defendant in a speedy trial."

On December 24, 2002, the district court denied the motion, finding no STA violation. United States v. Maxwell, 247 F.

Supp.2d 10, 15 (D. Mass. 2002) ("Maxwell I"). The court first held that Maxwell's STA clock began running on January 5, 2002, the day after her arraignment. See id. at 12. Second, the court found excludable the period between January 5 and March 7, 2002 because her co-defendant DeAson was not arraigned until March 6, 2002. See id. at 12. Third, the court found that Maxwell's motion to sever resulted in excludable delay from March 5 through November 1, 2002, pursuant to 18 U.S.C. § 3161(h)(1)(F) as "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 247 F. Supp.2d at 13. The court stated that it was relying on its

> usual practice in multi-defendant cases . . . not [to] decide any pending motions until the Magistrate Judge [has] completed her work concerning all of the defendants before her. Maxwell had not requested any variance from this practice or an expedited ruling on her Motion to Sever.

Id. at 14.

On February 13, 2003, Maxwell moved to dismiss the indictment on the basis that her Sixth Amendment constitutional right to a speedy trial had been violated. The district court denied this motion on March 3, 2003, finding "lack of any unusual prejudice caused by the passage of time." United States v. Maxwell, 247 F. Supp.2d 25, 32 (D. Mass. 2003) ("Maxwell II").

On March 7, 2003, pursuant to a plea agreement, Maxwell entered a conditional guilty plea to one count of wire fraud and

reserved the right to appeal the district court's denial of her motions to dismiss the indictment on speedy trial grounds under the STA and the Sixth Amendment. She was sentenced to eighteen months' imprisonment, three years' supervised release, and a $30,000 fine. This appeal followed.

## II. DISCUSSION

### A. Speedy Trial Act

We review the district court's denial of a motion to dismiss based upon the Speedy Trial Act de novo as to legal rulings and for clear error as to factual findings. United States v. Scantleberry-Frank, 158 F.3d 612, 614 (1st Cir. 1998).

The STA provides that a defendant be tried within seventy days of "the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The STA, however, "mandates the exclusion of certain periods of delay in calculating" the seventy days. United States v. Salimonu, 182 F.3d 63, 67 (1st Cir. 1999); see 18 U.S.C. § 3161(h)(1)-(9).

For Maxwell, the period began on January 5, 2002, the day after her arraignment. The period from January 5 to March 7, 2002 is excludable because DeAson was not arraigned until March 6, 2002. See United States v. Barnes, 251 F.3d 251, 258-59 (1st Cir. 2001)

("[T]he STA clock begins to run anew on the date of the last co-defendant's arraignment.").

The issue on appeal is whether the period from March 5, 2002 to November 1, 2002 is excludable due to Maxwell's motion to sever. The STA provides for exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F). Maxwell argues that a period is excludable under 18 U.S.C. § 3161(h)(1)(F) only after a court actually sets a date for a hearing on a pending motion. According to Maxwell, this means that only thirty days from the date the government had submitted its opposition to the motion to sever-- March 19, 2002--should be excluded, pursuant to 18 U.S.C. § 3161(h)(1)(J).[1] Hence, she contends that the STA clock began to run again on April 19, 2002 and expired seventy days later on June 28, 2002.

---

[1]That section provides:

"The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to . . .
(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."
18 U.S.C. § 3161(h)(1)(J).

We agree with the district court that "such a requirement should not be read into the statute." Maxwell I, 247 F. Supp.2d at 13. Maxwell's interpretation would require an on-the-record determination that a hearing on a particular motion is necessary. That Congress specifically required a finding on the record for continuances under 18 U.S.C. § 3161(h)(8)(A) indicates that Congress did not intend the same for time exclusions under 18 U.S.C. § 3161(h)(1)(F). See United States v. Grosz, 76 F.3d 1318, 1325 (5th Cir. 1996) (finding that "the language of Subsection F does not impose a requirement that the court formally set a motion for hearing"); cf. Henderson v. United States, 476 U.S. 321, 326-28 (1986) (interpreting 18 U.S.C. § 3161(h)(1)(F) not to have a reasonableness requirement because Congress placed such a requirement in 18 U.S.C. § 3161(h)(7) but not in sections (1)-(6), as well as recognizing Congressional intent that 18 U.S.C. § 3161(h)(1)(F) be read broadly with any limitations coming from circuit or district court rules rather than the statute itself).

In Salimonu, we affirmed in a similar case where the district court scheduled a hearing on the defendant's reconsideration motions a full two years after those motions were filed. The district court ruled that the time between the filing of the motions and the date of the hearing was excludable under 18 U.S.C. § 3161(h)(1)(F). See 182 F.3d at 67-68. That is, the district court concluded, because the motions required a hearing,

the long delay in holding the hearing was irrelevant. See id. The defendant argued that the court's determination that a hearing was "required" was in error. See id. at 68. In affirming, we first noted that if a hearing, in fact, was not required, the "error would be significant; in other words, in contrast to the potentially unreasonable time that is excluded from STA calculations when a hearing is required, only 30 days may be excluded when a hearing is not required." Id. We deferred, however, to the district court's conclusion that the reconsideration motions were of the type that required a hearing, and that absent "obvious subterfuge" by the district court, "we are loath to question the court's judgment." Id. As a result, the time between the filing of the motion and the hearing was excludable. See id.

Salimonu guides us to the same conclusion here. After reading Maxwell's "skillfully written" motion to sever, an accompanying sixteen-page memorandum, three exhibits, and the government's thirteen-page opposition, the district court ultimately concluded that the motion raised complex issues and required a hearing. Maxwell I, 247 F. Supp.2d at 14. Even though it took the court eight months to state on the record that it had decided this, we hold that 18 U.S.C. § 3161(h)(1)(F) permits the entire time to be excluded. Our conclusion is consistent with the broad reading accorded to the statute and our reluctance to impugn

the district court's regular, justified practices. See Henderson, 476 U.S. at 327-28 (1986) (holding that exclusion tolls the entire period from the filing of a motion through the hearing on that motion, regardless of whether the delay is "reasonably necessary") (emphasis added); United States v. Staula, 80 F.3d 596, 601 (1st Cir. 1996) (holding that all the time between filing of a motion and hearing on that motion is excludable, "even if the delay is overlong, inexplicable, or unreasonable") (emphasis added).

Maxwell contends that overall, the district court "end [ran] the requirements of the Speedy Trial Act" by "sitting on all necessary papers concerning the severance motion for more than seven months and then stating that the court would have scheduled a hearing on the motion." She argues that the district court retroactively determined that a hearing was necessary on her motion to sever and that the court should have made that determination more promptly, especially when she had repeatedly asked for a speedy trial (albeit in inquiries to the Magistrate Judge and not to the district court itself). She also suggests that her interpretation of the statute would prevent the district court or the government from "jerry-build[ing] a 'hearing' in order to thwart the continuous operation of the Speedy Trial Act." Staula, 80 F.3d at 602 n.3 (1st Cir. 1996).

We do not believe that in this case the district court tried to avoid the mandates of the STA. The court made clear that

-9-

it followed its usual practice in multi-defendant cases of not deciding any pending motion until the Magistrate Judge had completed her work on all of the defendants before her. Maxwell I, 247 F. Supp.2d at 14. Maxwell did not challenge or request a variance from this practice, nor did she request an expedited ruling on her motion to sever. See id. Once the Magistrate Judge had issued final status reports as to all three co-defendants, the district court promptly set a date--November 1, 2002--for a conference at which a hearing on Maxwell's motion to sever could be scheduled. See id. The district court expressly stated at that conference that it intended to hold a hearing on the motion. The court, however, did not hold the hearing because Maxwell withdrew the motion shortly after the conference. As we have set out above, nothing in the STA or federal precedent requires the district court to make an on-the-record determination that a hearing is necessary in order for time to be excluded under 18 U.S.C. § 3161 (h)(1)(F). The court did not "decide that a hearing on [Maxwell's] Motion to Sever was necessary in order to defeat Maxwell's STA claim." Maxwell I, 247 F. Supp.2d at 14. "Rather, [the court] had determined that a hearing was necessary before learning that there was an STA claim to 'defeat.'" Id.

Thus, we agree with the district court's conclusion that the period from March 5, 2002 until November 1, 2002, is excludable under 18 U.S.C. § 3161(h)(1)(F) as Maxwell's motion to sever was

pending during this period. The district court did not err in denying Maxwell's motion to dismiss on STA grounds.

## B. Sixth Amendment

We review for an abuse of discretion the district court's denial of a motion to dismiss based on a violation of a defendant's Sixth Amendment right to a speedy trial. See United States v. Trueber, 238 F.3d 79, 87 (1st Cir. 2001).

The Supreme Court set out the standard for a Sixth Amendment speedy trial claim in Barker v. Wingo, 407 U.S. 514 (1972). We must consider: "(1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; (4) and the prejudice to the defendant caused by the delay." Id. at 530. None of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." Id. at 533.

The constitutional speedy trial right "attaches upon arrest or indictment, whichever occurs first." United States v. Santiago-Becerril, 130 F.3d 11, 21 (1st Cir. 1997). Here, Maxwell's speedy trial right attached upon the filing of the indictment, which took place on December 6, 2001. Because the trial was ultimately scheduled for March 10, 2003, the district

-11-

court determined that the delay amounted to 459 days, or approximately fifteen months.  247 F. Supp.2d at 29.

In Santiago-Becerril, we stated that "the weight given in the analysis to the length of the delay depends upon the extent to which the delay exceeds the bare minimum considered presumptively prejudicial," which is one year.  130 F.3d at 21-22.  In that case, where the delay, as here, was fifteen months, we found that:

> Santiago waited over fifteen months for the commencement of trial in this case, a case more complicated than "an ordinary street crime" but less so than "a serious, complex conspiracy charge."  Arguably, therefore, the period of the delay was long enough to tip the scales slightly in favor of Santiago's instant claim.

Id.  (citation omitted).

Based on the above, the district court here concluded that Maxwell's case was more complicated than the case in Santiago-Becerril, which was a car-jacking requiring a five-day trial.  247 F. Supp.2d at 29-30.  That is, the instant case involved one count of conspiracy, fifteen counts of wire fraud, and two counts of mail fraud, and the judge estimated that trial would take two weeks.  See id.  Thus, the court concluded that "the delay . . . either does not weigh in favor of dismissal or weighs only very slightly in favor of it."  Id. at 30.  This delay, the court assumed, was "presumptively prejudicial" and thus triggered further inquiry.

On the second factor, the district court found that the government had not acted negligently or in bad faith and that Maxwell also had not contributed to the delay (except for not

-12-

asking the district court itself for a speedy trial earlier). See id. Maxwell argues that the government's request to change the original trial date from February 24, 2003, to March 10, 2003 (due to another trial in Rhode Island) was unjustified. This delay of two weeks can hardly be called a "deliberate attempt to delay the trial in order to hamper the defense." Trueber, 238 F.3d at 88 (internal quotation marks and citations omitted). We agree with the court's conclusion that the reasons for the delay were due to neutral factors.

As for the third factor, Maxwell must "give some indication, prior to [her] assertion of a speedy trial violation, that [she] wishes to proceed to trial." Id. at 89 (internal quotation marks and citation omitted). Maxwell maintains that she consistently had asserted her speedy trial right by objecting to the joint motions of her co-defendants and the government to exclude time and by indicating that she was ready for trial.

In agreement with the district court, we find it significant that Maxwell waited until November 2002 to file an STA motion. She originally had filed the motion to sever in March 2002 and let the motion sit for several months. Indeed, the only action Maxwell took regarding the motion prior to November 2002 was to file a motion for clarification in September 2002, which asked the magistrate judge to clarify that, as of September, no decision had yet been made as to whether the motion to sever required a hearing.

Maxwell could have just as easily asked for a decision on the motion to sever in September since it had been pending before the district court for about six months.  By asking instead for a determination whether the question of a required hearing was still up in the air in September 2002, it is plausible that Maxwell was more interested in setting up the basis for a speedy trial claim than in ensuring that she in fact received a speedy trial.  As the district court stated, "The assertion of a defendant's speedy trial rights should not be a game in which the defendant attempts to engineer a basis to argue that the STA or the Sixth Amendment has been violated."  247 F. Supp.2d at 31.

The fourth factor "should be assessed in the light of the interests of the defendants which the speedy trial right was designed to protect."  Trueber, 238 F.3d at 90 (internal quotation marks and citation omitted).  The Supreme Court has identified three such interests:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532.

The district court noted that Maxwell had been incarcerated for less than two months and then had spent about ten months in home detention.  See 247 F. Supp.2d at 31-32.  We, however, have held that even fifteen months of pretrial

-14-

incarceration is insufficient, standing alone, to rise to the constitutional level of prejudice. See Santiago-Becerril, 130 F.3d at 23. We recognize that "considerable anxiety normally attends the initiation and pendency of criminal charges." Maxwell II, 247 F. Supp.2d at 32 (citing United States v. Henson, 945 F.2d 430, 438 (1st Cir. 1991)). We, however, agree with the district court that in the absence of "undue pressures" on the defendant as a result of the delay, we will not find a violation of the Sixth Amendment. Id. There were no such "undue pressures" identified in this case.

Finally, the district court concluded that Maxwell had not shown any damage to her defense as a result of any delay. See id. On appeal, Maxwell only contends that this sub-factor is "either neutral or slightly in [her] favor."

No single factor or combination of factors outlined in Barker definitively establishes that Maxwell's constitutional right to a speedy trial has been violated. Nor do we find any other relevant circumstances that militate in favor of Maxwell. Hence, we hold that the district court did not abuse its discretion in rejecting her motion to dismiss on Sixth Amendment grounds.

## C. "Relevant Conduct"

We review the district court's interpretation and application of the United States Sentencing Guidelines de novo and its findings of fact for clear error. See United States v. Gonzalez-Alvarez, 277 F.3d 73, 77 (1st Cir. 2002).

Maxwell claims that the district court erred when it found that the losses suffered by the May 1999 lenders were attributable to her as "relevant conduct" under U.S.S.G. § 1B1.3. She stresses the fact that she was not required by the court to pay restitution for losses that occurred in May 1999 because of the "sufficient temporal difference" between those amounts and the limited offense of conviction (the $500 wire transfer in June 2000). She argues that the court instead focused erroneously on her culpability without fully considering whether the offense of conviction was too remote and dissimilar from the loans made in May 1999. We disagree.

For all acts and omissions described in U.S.S.G. § 1B1.3(1)(A) and (B), the government must show that they "were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.2(2); United States v. Young, 78 F.3d 758, 763 (1st Cir. 1995). The government showed that Maxwell's activities were part of an ongoing scheme to help McIntosh repay the complaining October 1998 investors. She made numerous and varying false statements to investors both in order to obtain their money and as excuses for why they had not received the promised return on their investments. She received the $500 wire transfer as part of her effort to help McIntosh repay the May 1999 lenders whom she knew had not been repaid. Based on this evidence,

the district court correctly concluded that the $500 wire transfer was in furtherance of this larger scheme.

That there was a one-year lag between the defrauding of the 1999 lenders and the $500 wire transfer does not undermine the court's conclusion. The Guidelines expressly state that "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity" makes up for it. U.S.S.G. § 1B1.3, cmt. (n.9(B)). Here, at the time McIntosh wired the $500 to Maxwell in June 2000, Maxwell knew that McIntosh used a false name to hide his identity from the defrauded investors and to hide his financial relationship with Maxwell. This was all part of Maxwell's continual effort to help McIntosh obtain money to repay the earlier investors.

Similarly, the court's restitution decision does not undermine its conclusion on "relevant conduct." The court decided not to order restitution largely because "[Maxwell] doesn't have a penny." In addition, the court stated that if it was making a mistake by not ordering restitution for the full amount of the fraud (including the "relevant conduct" at issue here), "then the restitution should be higher, because I have no doubt that they're part of the same common scheme or plan."

Maxwell further argues that the district court erroneously relied on materials outside those in the pre-sentencing report and materials submitted by the parties. She contends that

the grand jury testimony of Albert Albee (who testified at DeAson's trial as well), which she submitted with her sentencing memorandum, supported her position that when she was recruiting the May 1999 lenders, she was only repeating information with which DeAson had provided her and which she believed to be true. She concludes that the reason the district court rejected her position was the court's decision, at DeAson's trial, to discredit Albee's testimony.

First, there is no indication that the district court considered Albee's prior testimony as part of Maxwell's sentencing. Second, the evidence produced by the government at Maxwell's sentencing conflicted with Albee's testimony at sentencing. The pre-sentencing report itself stated that by the time Maxwell recruited the 1999 lenders, "a preponderance of the evidence" suggested that she was aware that the loans were a "scam." In addition, the government produced seven FBI reports that implicated Maxwell in the 1999 loans. The court could have easily found that Albee's testimony presented by Maxwell at her sentencing was outweighed by the evidence produced by the government, without ever considering Albee's testimony at DeAson's trial. The court did not err in sentencing Maxwell based upon both the one count of wire fraud and the losses from the 1999 investors--the latter constituted "relevant conduct" for sentencing purposes.

Accordingly, we affirm.