# United States Court of Appeals
## For the First Circuit

No. 20-1236

UNITED STATES OF AMERICA,

Appellee,

v.

EDILIO BENJAMIN-HERNANDEZ,

Defendant, Appellant.

No. 20-1295

UNITED STATES OF AMERICA,

Appellee,

v.

JOHANNI BALBUENA-HERNANDEZ,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Kayatta and Howard, Circuit Judges,
and Casper, District Judge.*

---

* Of the District of Massachusetts, sitting by designation.

        Mariángela Tirado-Vales for appellant Edilio Benjamin-Hernandez.
        German A. Rieckehoff for appellant Johanni Balbuena-Hernandez.
        Julia M. Meconiates, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

---

September 21, 2022

---

**HOWARD**, <u>Circuit Judge</u>. Following a lengthy period of pretrial detention, appellants Edilio Benjamin-Hernandez (Benjamin) and Johanni Balbuena-Hernandez (Balbuena) were convicted on multiple charges stemming from a conspiracy to transport cocaine from the Dominican Republic to Puerto Rico. They now argue that the district court should have dismissed the indictment against them and that the evidence presented at trial cannot sustain their convictions. Benjamin also lodges two evidentiary challenges. But their panoply of claims falls short, and we affirm their convictions.

## I.

Benjamin and Balbuena were first indicted in November 2015 on multiple charges of conspiracy and importation of controlled substances. Following hearings in December, both were detained pending trial. Superseding indictments adding new co-defendants followed in March and July of 2016.

The parties engaged in extensive motion practice, with Benjamin and Balbuena together filing more than forty pretrial motions. Balbuena eventually filed over two years later a motion to dismiss the indictment based on alleged violations of both the Speedy Trial Act ("STA") and the Sixth Amendment. Benjamin joined this motion, which the court denied, finding no STA or constitutional violation in the length of the challenged period of

detention.   In June 2018, the court set Benjamin and Balbuena's cases for joint trial the following October.

During the four-day trial, the government presented evidence supporting its theory that Benjamin and Balbuena had transported drugs from the Dominican Republic aboard a yawl, which they ultimately abandoned near the shore in Vega Baja, Puerto Rico, when detected by local law enforcement.  A jury convicted Benjamin and Balbuena of conspiracy to possess with intent to distribute at least five kilograms of cocaine, and of aiding and abetting the importation of at least five kilograms of cocaine.[1]  Following the verdict, Benjamin and Balbuena each filed renewed motions for acquittal pursuant to Federal Rule of Criminal Procedure 29(c), which the court denied.

On appeal, Balbuena, joined by Benjamin, challenges the district court's denial of their motion to dismiss.  Balbuena and Benjamin also argue that the evidence presented at trial was insufficient to support their convictions.  In addition, Benjamin raises two evidentiary challenges.  We address each claim in turn.

---

[1] The jury also convicted Benjamin of improper entry as a noncitizen and Balbuena of unlawful reentry as a removed noncitizen.  Neither appellant challenges these convictions on appeal.

## II.

**A.   Speedy Trial Act**

"The STA provides generally that, upon motion, an indictment must be dismissed if the defendant's trial has not commenced within 70 days from the latter of the return of the indictment or the defendant's first appearance before a judicial officer." United States v. Gates, 709 F.3d 58, 64 (1st Cir. 2013) (citing 18 U.S.C. § 3161(c)(1)).  But "[t]his 70-day limit is not absolute," and certain periods of time may be excluded.  Id. (citing 18 U.S.C. § 3161(h)).  "If a defendant is not brought to trial" within the required time limit, "the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2).

Typically, we review a "denial of a statutory speedy trial claim de novo as to legal rulings, and for clear error as to factual findings." United States v. Irizarry-Colón, 848 F.3d 61, 65 (1st Cir. 2017) (quoting United States v. Carpenter, 781 F.3d 599, 616 (1st Cir. 2015)).  But "a defendant can waive or forfeit a claim of error in the application of the Act by failing to timely raise the claim in the district court," thereby limiting our review. United States v. Gottesfeld, 18 F.4th 1, 6 (1st Cir. 2021) (citing United States v. Valdivia, 680 F.3d 33, 41 (1st Cir. 2012)), pet. for cert. filed, No. 21-1313 (U.S. Apr. 1, 2022).

Balbuena argues that his initial appearance on November 23, 2015, started the seventy-day clock, which ran until he filed his motion to dismiss on March 6, 2018. This totaled 834 days, "of which only 503 days were properly excluded." But Balbuena's claim hits a threshold problem: his motion before the district court challenged only the period between his initial appearance on November 23, 2015, and May 4, 2016, the day that the case was transferred to a new judge following the original judge's retirement. "[W]e do not go hunting for nonexcludable time; exclusions of time not specifically challenged in the district court are waived on appeal." United States v. Laureano-Pérez, 797 F.3d 45, 57 (1st Cir. 2015) (citing Gates, 709 F.3d at 67-68); see United States v. Souza, 749 F.3d 74, 81 (1st Cir. 2014). We thus limit our analysis of Balbuena's challenge to the specific timeframe that he raised before the district court.

The STA excludes "reasonable period[s] of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." United States v. Casas, 425 F.3d 23, 31 (1st Cir. 2005) (alteration in original) (quoting 18 U.S.C. § 3161(h)(6)). "The Supreme Court has interpreted this section to mean that the clock does not, in effect, begin to run until the date of the most recent defendant's initial appearance before the court." Id. (citing Henderson v. United States, 476 U.S. 321, 323 n.2 (1986)); see

also <u>United States</u> v. <u>Barnes</u>, 251 F.3d 251, 257 (1st Cir. 2001) ("[T]he time line for the last defendant joined usually becomes the time line for all defendants."). Here, defendants were indicted in a second superseding indictment on July 20, 2016, which also charged several new co-defendants. Accordingly, the district court found that "the 70-day clock remained tolled until at least the last co-[d]efendant's triggering event, namely [the last co-defendant's] arraignment on February 1, 2017." This meant that "there was no violation of the STA's 70-day limit" within the time frame challenged by Balbuena because the clock effectively did not start until February 2017.

Balbuena now argues that "he was not 'joined for trial' within the meaning" of the STA with the co-defendants added in the second superseding indictment because, ultimately, he was tried with only Benjamin. Balbuena also argues that the district court failed to make a reasonableness finding before concluding that the second superseding indictment tolled the clock. But Balbuena failed to preserve these arguments because he did not raise them before the district court. <u>See</u> <u>Rockwood</u> v. <u>SKF USA Inc.</u>, 687 F.3d 1, 9 (1st Cir. 2012) ("Our case law is clear that 'arguments not raised in the district court cannot be raised for the first time on appeal.'" (quoting <u>Sierra Club</u> v. <u>Wagner</u>, 555 F.3d 21, 26 (1st Cir. 2009))). At most, we can review for plain error, <u>see</u> <u>Gottesfeld</u>, 18 F.4th at 5-6, but Balbuena "makes <u>no</u> attempt to

show how his . . . claim[s] satisf[y] the demanding plain-error standard -- his brief fails to even mention plain error, let alone argue for its application here." United States v. Cruz-Ramos, 987 F.3d 27, 40 (1st Cir. 2021).[2]  That failure definitively waives these arguments and denies us the opportunity to consider them further.

## B.    Sixth Amendment Violation

When the government violates a criminal defendant's Sixth Amendment "right to a speedy and public trial[,]" the criminal charges against the defendant "must be dismissed." United States v. Lara, 970 F.3d 68, 80 (1st Cir. 2020) (first quoting U.S. Const. amend. VI and then quoting United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010)), cert. denied sub nom. Williams v. United States, 141 S. Ct. 2821 (2021).  "To assess whether a defendant's Sixth Amendment right has been violated, we consider four factors: (1) 'the length of delay'; (2) 'the reason assigned by the government for the delay'; (3) 'the defendant's responsibility to assert his right'; and (4) 'prejudice to the defendant, particularly "to limit the possibility that the defense

---

[2] It may be possible that, in the context of the STA, arguments not raised before the district court are waived on appeal, rather than forfeited, thereby preventing even plain error review.  See Valdivia, 680 F.3d at 41; Gottesfeld, 18 F.4th at 5-6.  But, because Balbuena has waived plain error review, the present case does not require resolution of that question.

will be impaired."'" Id. (quoting United States v. Handa, 892 F.3d 95, 101 (1st Cir. 2018)).

We typically apply the abuse of discretion standard to a district court's resolution of a defendant's motion to dismiss based on a Sixth Amendment violation. See United States v. Maldonado-Peña, 4 F.4th 1, 15 (1st Cir. 2021). But "there is some debate about whether" this is the appropriate standard, and Balbuena asserts that we should review his constitutional claim de novo. Id. at 15, n.6. Since, for the reasons discussed below, Balbuena's claim fails under either standard, we may sidestep this issue for now.

Considering the first factor, "[d]elays of around a year or longer are presumptively prejudicial," and the district court correctly found that the roughly thirty-three month delay that Balbuena and Benjamin experienced weighed in their favor. Lara, 970 F.3d at 81.[3]

The "second factor concerns the explanation for the delay" and is the focal point of our inquiry. Id. at 82 (quoting Souza, 749 F.3d at 82). The district court found that the second factor "weigh[ed] heavily against Defendants" given the complexity of the case, numerous pretrial motions (including 43 filed by

---

[3] The district court denied the motion to dismiss in late August 2018 and the appellants' trial began roughly a month and a half later, bringing the total delay between their arrest and trial to approximately thirty-four and a half months.

- 9 -

Balbuena and Hernandez), lack of any evidence indicating bad faith by the government, and circumstances out of the parties' control, including the Hurricane Maria natural disaster and the unavailability of Balbuena's first counsel due to illness. We agree that the reasons for the delay described by the district court, which the record supports, "weigh against a finding of [a] Sixth Amendment violation." Casas, 425 F.3d at 34; see id. at 33-34 (noting defendants' filing of numerous pretrial motions and lack of allegations of bad faith by the government, and explaining that "the joint prosecution of defendants involved in the same drug trafficking conspiracy is justified as a means of serving the efficient administration of justice"); see also Lara, 970 F.3d at 82 (explaining that lack of "evidence that the delay was a product of bad faith or inefficiency on the government's part" weighed against finding a Sixth Amendment violation); United States v. Worthy, 772 F.3d 42, 49 (1st Cir. 2014) (holding that delay attributable to "the number of defendants, the multiplicity of motions and events . . . , and the complexity of the case" did not violate the Sixth Amendment).

As for the third factor, the district court correctly found that the undisputed fact that defendants had asserted their speedy trial right on multiple occasions weighed in their favor. See Casas, 425 F.3d at 34.

Turning to the final factor, the court explained that defendants had not demonstrated "undue pressures" aside from their lengthy period of detention. "[W]e have previously 'recognized three types of prejudice: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence."'" Maldonado-Peña, 4 F.4th at 17 (quoting Lara, 970 F.3d at 82-83). Balbuena asserts that during his pretrial detention his "anxiety reached such levels that he became antagonistic and upset" and he "lost faith in his attorney." Balbuena further argues that he was taken "away from his family and country and deprived of the opportunity to work" and "was forced to endure the terrible conditions resulting from Hurricane Maria while deprived of his liberty." We do not doubt the challenging nature of Balbuena's time in pretrial detention, particularly during Hurricane Maria. But Balbuena has not identified "undue pressures" that go "above and beyond the 'considerable anxiety [that] normally attends the initiation and pendency of criminal charges,' as [is] necessary to show prejudice." Worthy, 772 F.3d at 49 (first alteration in original) (quoting United States v. Maxwell, 351 F.3d 35, 41 (1st Cir. 2003)); see also Carpenter, 781 F.3d at 615 ("While [defendant] argues convincingly that he has suffered great stress throughout the proceedings, he does not demonstrate why his anxiety was

- 11 -

greater than that suffered by many other defendants, other than that it continued longer." (citing United States v. Colombo, 852 F.2d 19, 26 (1st Cir. 1988))).

Balbuena also argues that the length of his detention alone renders it presumptively prejudicial. Balbuena did not clearly raise this argument before the district court and thus likely waived it. See Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d 1033, 1037 (1st Cir. 1988). In any event, his argument falls short. Balbuena cites Doggett v. United States, 505 U.S. 647 (1992), and our opinion in RaShad v. Walsh, 300 F.3d 27 (1st Cir. 2002). But the delays in those cases were significantly longer than the one here. See Doggett, 505 U.S. at 650 (eight and a half years between indictment and arrest); RaShad, 300 F.3d at 36 (five years and eight months delay between indictment and trial). In RaShad, moreover, we noted "that the presumption is [n]either automatic or inexorable" but rather kicks in only "[i]n aggravated cases, involving grossly excessive delay." 300 F.3d at 34, 42. And we have repeatedly looked for actual prejudice in cases where the delay exceeded the length of the delay here. See, e.g., Maldonado-Peña, 4 F.4th at 18. We therefore decline to depart from the "general rule" that "the defendant bears the burden of alleging and proving specific ways in which the delay attributable to the [government] unfairly compromised his ability to defend himself." RaShad, 300 F.3d at 34.

- 12 -

Applying that general rule, the district court concluded that Balbuena and Benjamin's "lengthy pretrial detention [gave] cause for concern," but nevertheless found that the balance of the factors did not show that appellants' speedy trial rights had been violated.  The district court's observation that the length of their pretrial detentions was concerning cannot be gainsaid.  The length of time the defendants spent in detention while awaiting trial is deeply unsettling.  No one should assume that, in the proper case, with a defendant alert to his rights, this or any other of our cases countenance a holding that the Constitution accepts pretrial detention of virtually any length for people waiting to have their day in court.  Cf. Maldonado-Peña, 4 F.4th at 18-19 (explaining this court's concern with the government's practice of "monolithically process[ing] 'mega-cases'" that result in some defendants -- presumed innocent -- waiting incarcerated for years while the trial court resolves codefendants' pleas and motions); Shon Hopwood, The Not So Speedy Trial Act, 89 Wash. L. Rev. 709, 739 (2014) (arguing that "[d]elay is a federal prosecutor's friend" because it increases "the chance a prosecutor has to flip a co-defendant into a cooperating witness").

But the district court's ultimate conclusion here falls within the limits permitted by our cases, and the absence of both bad faith on the part of the government and particularized prejudice to the appellants persuades us that no Sixth Amendment

violation occurred here.  See, e.g., Maldonado-Peña, 4 F.4th at 18 (explaining that "defendants' five-year wait for trial" was gravely concerning but nevertheless did not violate the Sixth Amendment where it was counterbalanced by defendants' "contributions to the pretrial delays" and failure to show "how their ability to mount an adequate defense was hampered by the delay"); Casas, 425 F.3d at 36 (holding that forty-one months in pretrial detention did not violate the Sixth Amendment given "the large and complex nature of the proceedings and the district court's obligation to consider the multitude of pretrial matters filed by appellants and their co-defendants").

## C.    Sufficiency challenges

Balbuena and Benjamin next challenge the sufficiency of the evidence supporting their convictions.  We review de novo the denial of a Rule 29 motion for judgment of acquittal.  United States v. Gaudet, 933 F.3d 11, 15 (2019).  "[W]e must affirm unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt."  Id. (alteration in original)(quoting United States v. Gómez-Encarnación, 885 F.3d 52, 55 (1st Cir. 2018)); see also United States v. Davila-Nieves, 670 F.3d 1, 7 (1st Cir. 2012).

**1.    Evidence in the record defeats Balbuena's sufficiency claim**

Balbuena acknowledges the following evidence against him: 1) that he was "found in the general vicinity of the vessel and controlled substances," specifically in an abandoned, wooded area, where he was found wet, sandy, and agitated; 2) Balbuena's statement to a DEA agent that he was "there to pick up . . . the stuff you have there," which the agent took as a reference to the cocaine that the agents had seized; and 3) the testimony of a cooperating coconspirator who stated that Balbuena was present when he dropped off five kilograms of cocaine that the coconspirator understood was to be transported to Puerto Rico in a vessel, and which he later heard arrived in Puerto Rico but was "abandoned" near Vega Baja.  This evidence notwithstanding, Balbuena argues that "there simply was no evidence that he ever participated in the planning of the drug transfer or importation" or "that he was in the presence of drugs," and therefore "the government cannot possibly establish that [he] ever had constructive or knowing possession of the cocaine."

Balbuena "undervalues the evidence against him." United States v. Meises, 645 F.3d 5, 12 (1st Cir. 2011).  Without even considering any of the numerous additional pieces of evidence that the government identifies, the evidence acknowledged by Balbuena himself is enough to sustain his convictions.  See, e.g., United States v. Ríos-Ortiz, 708 F.3d 310, 316 (1st Cir. 2013) (finding

evidence that defendant prepared food delivery orders for prison which were found to contain drugs was sufficient "circumstantial evidence to demonstrate the existence of an agreement to distribute controlled substances"); Meises, 645 F.3d at 12 ("The testimony of a single witness can be enough to support the government's case, and even the uncorroborated testimony of an informant may suffice 'to establish the facts underlying a defendant's conviction.'" (internal citations omitted)).

When the evidence is viewed in the light most favorable to the verdict, this is not, as Balbuena argues, a mere presence case. See, e.g., United States v. Rodriguez-Martinez, 778 F.3d 367, 371 (1st Cir. 2015) ("We have said repeatedly that mere presence alone 'is insufficient to prove knowing possession of narcotics.'" (quoting United States v. Martinez, 922 F.2d 914, 923 (1st Cir. 1991))). Rather, all three pieces of evidence "support the inference" that Balbuena "had knowledge of the crime." Id. Balbuena's sufficiency claim thus fails.

2. **Benjamin waived his sufficiency claim**

In his brief to this court, Benjamin begins his sufficiency argument by summarizing the government's evidence. He then states that "[a]s it will be argued in the next section, [this] evidence . . . is insufficient to support and sustain the conviction." But the next section of Benjamin's brief discusses the district court's alleged evidentiary errors, and Benjamin

never returns to his sufficiency argument. By failing to develop this argument, Benjamin has waived it. See Acevedo-Garcia v. Monroig, 351 F.3d 547, 561 (1st Cir. 2003).[4]

## D. Evidentiary challenges

Finally, Benjamin argues that the district court made two evidentiary errors: a) admitting unauthenticated telephone recordings, and b) allowing inappropriate opinion testimony by Agent Irvin Robert García-Martínez, a law enforcement agent with the National Directorate of Drug Control in the Dominican Republic. We review preserved objections to evidentiary rulings for abuse of discretion. United States v. Kilmartin, 944 F.3d 315, 335 (1st Cir. 2019). Unpreserved objections receive plain error review, "which is -- by design -- extremely hard to establish." United States v. Galíndez, 999 F.3d 60, 65 (1st Cir. 2021); see also United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016).

Benjamin raises his argument about the authentication of the telephone recordings for the first time on appeal. Our review is thus limited to plain error. But Benjamin does not argue plain error; "he does not anywhere cite the four-factor test or attempt

---

[4] A generous reading of Benjamin's brief could take this section to mean that, without the telephone recordings and opinion testimony that Benjamin challenges later in his brief, the government's evidence is insufficient to support his conviction. But even taking that evidence out of the picture, Benjamin's sufficiency challenge would fail for the same reasons that Balbuena's fails.

to establish its . . . factors," and has thus waived this claim. Pabon, 819 F.3d at 34; see also Cruz-Ramos, 987 F.3d at 40.

Benjamin's objection to Agent García's testimony fares no better.  Benjamin raises "general grievances" with the testimony but fails to identify any specific portion of it as problematic. United States v. Belanger, 890 F.3d 13, 24 (1st Cir. 2018).  In a footnote, Benjamin does cite a five-page section of the trial record where he objected to Agent García's testimony.  Even if this was sufficient to preserve this claim on appeal, our own unaided review of those five pages reveals one statement that perhaps Benjamin has in mind in alleging improper overview testimony, where the agent testified, apparently from background knowledge of the investigation, that Benjamin had used a different phone number not identified by law enforcement to contact another person about a proposal to act as drug courier.  But, as the government notes, any error in permitting this testimony was clearly harmless given the evidence against Benjamin.  See United States v. Flores-de-Jesús, 569 F.3d 8, 27 (1st Cir. 2009) ("The admission of improper testimony is harmless if it is 'highly probable that the error did not influence the verdict.'" (quoting United States v. Casas, 356 F.3d 104, 121 (1st Cir. 2004))).[5]

_____

[5] Threaded into Benjamin's discussion of Agent García's testimony are statements that 1) Agent García's testimony was not truthful, and 2) Agent García's testimony was "an attempt by the government to bolster the credibility of" a cooperating

**III.**

For the foregoing reasons, Benjamin and Balbuena's convictions are **<u>affirmed</u>**.

---

codefendant who testified after Agent García. To the extent that these statements can be considered additional claims outside of Benjamin's general objection to Agent García's overview testimony, they are waived for lack of development. <u>See</u> <u>Acevedo-Garcia</u>, 351 F.3d at 561.